Don L. HAMNER, Janet T. Hamner, Robert C. Bateman, Helen G. Bogard, Frank T. Calhoun, Margaret E. Calhoun, Albert J. Cooper, Imelda J. Cooper, Ruby Ann Cooper Gaskin, H. Tinley Gibson, Thelma J. Gibson, Troy K. Hartwell, Patricia A. Kemper, Frances C. Martin, Joseph C. Martin, Jr., Albert Meade, Lucy H. Meade, Theresa H. Nichols, Thomas C. Nicholson, Charlene Sellers, O.N. Kelly Sellers, Karen Smith, Harold H. Smith, Kathryn B. Snider, Ernest H. Speckman, Jr., Nancy C. Speckman, Donald Spoonamore, Kathleen Spoonamore, and Carolyn Strauss, Appellants,

v.

Roy D. BEST, Pauline B. Jenson, City of Danville Board of Zoning Adjustment and Appeals, Christian Church Children's Campus of Danville, Inc., Danville-Boyle County Planning and Zoning Commission, and Hugh Kidwell, Zoning Enforcement Officer of the Danville-Boyle County Planning and Zoning Commission, Appellees.

Court of Appeals of Kentucky.

Sept. 9, 1983.

**254**

Merle C. Clark, Danville, for appellants.

Elizabeth Nickels and Jack M. Smith, Danville, for appellees.

Before HAYES, C.J., and GUDGEL and McDONALD, JJ.

HAYES, Chief Judge.

The appellee, Christian Church Children's Campus of Danville, Inc. (hereinafter, Children's Campus), is a non-profit entity which operates a residential treatment center on Perryville Road in Boyle County, Kentucky, for children who have experienced some emotional disturbance related to their home environment and/or resulting from abandonment or abuse. The Children's Campus does not provide treatment for juvenile offenders, mentally retarded children, or children who have problems related to drug or alcohol use. Children's Campus desires to use a large, older home, located at 206 Maple Avenue in Danville, as a child care facility to house one married couple and an average of six, but no more than eight, children. Those children living in the facility would be those who no longer need the treatment provided by the Perryville Road facility, but who do not have a secure, stable home to return to, and for whom no foster or adoptive home seems likely to be found.

On February 27, 1982, Children's Campus applied to the appellee, Board of Zoning Adjustment and Appeals (hereinafter, Board), pursuant to §§ 543 and 550 of the Zoning Ordinance of Boyle County and the Cities of Danville, Junction City and Perryville (hereinafter, zoning ordinance), for a certificate of occupancy and for an interpretation of § 421A of the zoning ordinance, which refers to permitted uses in R–1 areas, as it applies to the proposed use of the property. In the alternative, Children's Campus asked the Board for a certificate as a permitted conditional use pursuant to § 425 of the ordinance, which pertains to non-profit facilities; or, as the building had previously been converted to and used as three apartments, it asked for a determination that the proposed use of the property was a permissible continuation of the property's existing non-conforming status.

A public hearing was held by the Board on March 18, 1982, at which time Children's Campus presented its proposal. Many of the appellants, owners and residents of the area, voiced disapproval of the proposed use. The Board, in its opinion rendered March 31, 1982, found that "the husband and wife and the children will function as one housekeeping unit, cooking and eating together, sleeping under one roof, dividing the household chores among themselves ...." It further found that although the "vast majority of the neighborhood" objected to the proposed use, there was no convincing evidence introduced to distinguish the proposed household from one containing

"6 or 8 blood related children living together in one household unit," and concluded that Children's Campus was entitled to a certificate of occupancy as a permitted use in the R–1 zone.

██ Pursuant to KRS 100.347, the appellants sought review of that decision in the Boyle Circuit Court. On September 2, 1982, summary judgment was entered, affirming the decision of the Board, from which this appeal is taken. The only issue to be decided herein is whether the Board abused its discretion or erred as a matter of law in determining that the Children's Campus was entitled to a certificate of occupancy as a permitted use to operate a group home in the R–1 district. The Board's determination will be upheld on review if supported by "substantial, reliable and probative evidence found within the record as a whole." *Hocker v. Fisher,* Ky.App., 590 S.W.2d 342 (1979).

██ Although the parties have cited us to numerous decisions outside this jurisdiction, we believe that the issue raised herein can be resolved by application of Kentucky law and the principles of property law contained therein. Zoning resolutions are in derogation of the common law and deprive a property owner of certain uses of his land, and as such, must be strictly construed. *Smith v. Howard,* Ky., 407 S.W.2d 139, 141 (1966). Any restrictions contained in zoning resolutions may not be extended by the courts to include limitations not clearly prescribed. *Robertson v. Western Baptist Hospital,* Ky., 267 S.W.2d 395 (1954). Applying these well-established principles to the facts herein leads us to the conclusion that the Board neither abused its discretion, nor erred in its interpretation of the zoning ordinances.

The specific provisions of the zoning ordinance relevant to this matter are as follows:

*Section 210 Definitions*

12. Dwelling and Dwelling Unit: A dwelling is a building providing shelter, sanitation, and the amenities for permanent habitation. It does not include mobile homes, temporary lodging, or sleeping rooms. Dwelling unit refers to that dwelling accommodation within a building designed for one individual or family unit maintaining separate and independent housekeeping.

*Section 420 Residential Districts*

Intent—To establish and preserve quiet single and multi-family home neighborhoods as desired by large numbers of people, free from other uses except those which are both compatible with and convenient to the residents of such a district.

*Section 421 Permitted Uses in R–1 Districts*

A. Single-family dwellings

The zoning ordinance does not contain a definition of the terms "family" or "single-family."

The appellants argue that as the proposed group home has several characteristics of an "institution," the Board abused its discretion by failing to determine the facility to be a "governmental use or an institution" which, under § 233 of the ordinance could operate in an R–1 district only as a conditional use. However, the record contains substantial evidence that the residents of the home would function as, and resemble that of, any other single-family household. In fact, the evidence clearly indicates that the entire purpose of the group home is to provide a traditional home environment for the children; that they would continue to attend community schools and participate in community activities as other children; that no professional counselor would reside in the home; that the children, as being neither juvenile offenders nor retarded, would not be subjected to excessive institutional type rules and regulations; that there would be no signs or other indications on the property that the house was other than a single-family dwelling. Thus, the Board was not compelled to find the facility to be an "institution", and the evidence sufficiently supports its findings.

Appellants further argue that the Board's decision is too broad and contrary to the intent of the framers of the zoning ordinance. As the ordinance does not include a

definition of "family", the Board was not constrained to apply a narrow definition of "single-family dwelling." In *Mullins v. Nordlow,* 170 Ky. 169, 185 S.W. 825 (1916), our highest court, in construing a land use restriction in a lease, held as follows:

> Undoubtedly, the word 'family' ordinarily includes parents, children, servants and such other persons as the parents may be under a natural or legal obligation to maintain; but the word is often given a broader meaning, that is, it may and does sometimes mean a collection of persons living together in a home, though none of them be married. (*Id.* at 177, 185 S.W. 825).

That court also cited, 3 *Words and Phrases,* 2623 which defines "family" as "a collective body of persons who live in one home, under one head or manager . . . ." *Id.*

In the *Robertson* case, *supra,* the court was required to construe a zoning ordinance which defined "family" as "one or more persons living together as a single unit, as distinguished from a group occupying a hotel, club, fraternity or sorority house." The court, citing the *Mullins* case, *supra,* held that the word "family" is ". . . an elastic term and is applied in many ways," and ruled that a home for twenty nurses, living in a Paducah residence, was a permitted use in an area zoned for single family dwellings. Clearly the term "family," as determined by our highest court in the context of land use cases or zoning, may include unrelated individuals and has not been construed to refer only to those related by blood, marriage or adoption.

As the appellants point out, other jurisdictions have not given the term "family" the broad definition applied by our Court. In *Culp v. City of Seattle,* 22 Wash.App. 618, 590 P.2d 1288 (1979), the appellate court affirmed the trial court's order which determined that a facility to house twelve retarded children was not a conditional use in a zone classified as one for single family residences. Judge Andersen, in a concurring opinion expressed sentiments which parallel those of the appellants:

The problem with stretching the definitions of the words 'family' and 'home' in the zoning code to achieve that which is felt to be socially desirable (that is, to allow special housing for retarded citizens to be established in single family residential neighborhoods) is that once stretched, the definition may also accommodate that which may not necessarily be so socially desirable, such as mini-prisons, for example.

We are sensitive to the desires to the appellants and others similarly situated throughout the Commonwealth, to maintain the integrity and residential characteristics of their neighborhood. We also recognize that a city may restrict the number of unrelated persons living together in its residential zones. *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). However, as the City of Danville has heretofore not restricted its occupants of R–1 districts to those who are related, nor attempted to define "family" in its ordinance, we hold that the Board did not err by failing to interpret the ordinance to require consanguinity among those residing in its single-family dwellings.

Finally, the appellants argue that the judgment of the circuit court should be given little weight as it was drafted by the attorney for one of the appellees. As the purported tendered judgment is not contained in the record on appeal, this error has not been properly preserved for review. It is well settled that matters not disclosed by the record cannot be considered on appeal. *Jackson v. Jackson,* Ky.App., 571 S.W.2d 90, 93 (1978).

The judgment of the Boyle Circuit Court is affirmed.

All concur.