**TRANSITIONS, INCORPORATED, Appellant,**

v.

**The BOARD OF ZONING ADJUSTMENT OF the CITY OF ASHLAND, Boyd County, Kentucky; Robert Elliott; Ed. H. Monk; Robert Ball; Ernest Greene; Charles Frasure; Ashland Planning Commission, Boyd County, Kentucky; Blake Holbrook; David Barbour; Elaine Mullins; Fern Monroe; David Williams; Margaret Scott; L.E. Roberts; Larry Brown and Ewing Flood, Appellees.**

Court of Appeals of Kentucky.

March 20, 1987.

Rehearing Denied May 15, 1987.

M. Kevin Lett, Gray, Woods & Cooper, Ashland, for appellant.

Robert L. Templeton, Hermansdorfer & Templeton, Ashland, for appellees.

Before COMBS, GUDGEL and McDONALD, JJ.

McDONALD, Judge:

The appellant, Transitions, Incorporated, is a nonprofit entity which provides residential facilities, counseling and guidance services to qualified pre-released or paroled persons from the Commonwealth's penal institutions.

The appellant selected a site for its operation in the city of Ashland at 455 29th Street. The property is situated in a designated light industrial zone. The appellant was advised by the Director of Planning and Community Development that the intended use of the property was a "permitted" use in such a zone. With this advice, appellant purchased the property and spent approximately $135,000 on renovations. The City of Ashland Chief Building Inspector issued a certificate of occupancy, satisfied, from an administrative standpoint, that the appellant had complied with the zoning ordinances in its use of the property as a "halfway house."

The appellees, affected property owners and residents, pursuant to KRS 100.257, filed protests with the appellee Board of Zoning Adjustment, asserting that the use of the property, as approved, is a prohibited one within the light industrial zone. The board found that appellant's facility would house 26 clients with the average resident spending from 30 to 90 days in the facility. Additionally, it found that the term "halfway house" was not addressed in any respect in the Ashland zoning ordinance adopted in 1967, that a halfway house could very well be a nuisance to the community or be detrimental to neighboring properties in violation of the intent statement of Section 13 of the Ashland Zoning Code which provides as follows:

The Light Industrial Districts I–1 are primarily for heavy commercial and light industrial uses whose activities do not usually constitute a fire hazard or emit smoke, glare, noise, odor, or dust, or in any other ways constitute a nuisance or be detrimental to neighboring properties.

Finally, the board concluded that a halfway house for pre-released persons was not consistent with the primary purposes of the zoning ordinance, those being to promote the public safety and general welfare of the community. The board revoked the certificate of occupancy approved by the Director of Planning and Community Development and issued by the Building Inspector.

An appeal was taken pursuant to KRS 100.347 to the circuit court. The decision of the board was upheld by the circuit court but on different grounds. In reaching its decision, the circuit court took judicial notice that a halfway house includes "treatment of unusually hazardous nature," reasoning that a person sent to prison is judicially determined to be too great a risk for probation and is in need of correctional treatment inside a prison. The court concluded that a halfway house was not a permitted use in the industrial zone. The appeal to this court followed.

The appellant's first assignment of error states that the proposed use of the subject real estate is not a "prohibited use" under Sections 157.096 and 157.097 of the zoning code of the City of Ashland and therefore under its plain provisions is a permitted use.

The pertinent provisions of the Code are as follows:

*§ 157.096 Permitted Uses*

*Any use not specifically prohibited* in § 157.097 *shall be permitted* in I–1 districts. [Emphases added.]

*§ 157.097 Prohibited Uses*

In I–1 districts no building or land shall be used, built, altered, or erected for any of the following purposes:

A) [Note: Listed herein are approximately 55 specifically prohibited uses under this section. The proposed use of the property as a halfway house or a use

even remotely akin to its function and operational concept is not prohibited by being named.]

The appellant argues that the principle found in *Robertson v. Western Baptist Hospital,* Ky., 267 S.W.2d 395 (1954), and more recently addressed in *Hammer v. Best,* Ky.App., 656 S.W.2d 253 (1983), requires a strict construction of these provisions of the zoning ordinance in its favor. The law is clear that when the common law (here, free use of one's own property) is lessened by a legislative enactment, be it statute or city ordinance, such must be strictly construed. Without question the proposed use of the property as a halfway house is not prohibited by § 157.097 of the zoning ordinance at issue. However, we are reluctant to resolve the case on this basis. Using property to facilitate a halfway house for convicted felons was not a use contemplated in 1967 when the ordinance was adopted. Surely, a proposed use must be compatible with the zone designation it falls within.

Here, we have a proposed use which, in concept, is totally contemporary although its purpose and functional operation is clearly a residential-type use, that is, an intense use similar to that of a boarding or rooming house. As the appellees point out, the housing of convicted criminals is an undertaking historically left to the state and not to private enterprise. Thus, it is not a use that generally would concern those drafting a zoning ordinance.

We thus must come to grips with the question of the intent of the legislative body in designing the light industrial zone in this ordinance. Industrial zoning has always been the stepchild of a community's planning. Usually wet lands, low-lying places and other esthetically unattractive areas are put into the industrial zones. As an overall use the industrial zone is the community's catch-all or "anything goes" area. As seen hereinbefore the purpose of the zone, according to the ordinance, is "primarily for heavy commercial and light industrial use." It gives no precise definition of "light industrial"; however, the use of the word "primarily" indicates there were incidental or accessory uses contem-

plated within the zone. We would not, however, construe the terms "heavy commercial" and "light industrial" in their ordinary senses as including residential-type uses. Looking further in the ordinance, though, we find a section which provides for residential use in this zone. Section 157.098(A) states, "Residential structures. All buildings intended primarily for residential use shall comply with the area, yard, and height requirements...." This section would not be included under that portion of the ordinance pertaining to the Light Industrial District unless some residential use was intended. This intent being of clear import in the ordinance, coupled with the actions of the Director of Planning and Community Development, and the Building Inspector, we believe requires us to hold (1) that the circuit court erred as a matter of law in its determination that the use was not a permitted one, and (2) that the board was arbitrary in its revocation of the certificate of occupancy.

The authority of *Ashland Lumber Company v. Williams*, Ky., 411 S.W.2d 909 (1966), a first cousin to the case at bar, is enlightening but not controlling. It says:

> [T]he appellants proceeded to treat the building permit as some kind of final decision by proper authority that their proposed building would not violate the zoning regulations. Again there was no justification for reliance, mainly because the building inspector has no power or authority to make such decisions. [Case cited.] If the inspector issues a permit for a use that violates the zoning regulations, the permit is no protection and its issuance does not estop the city from enforcing the regulations. [Case cited.]

In the case before us, the permit was not issued in violation of the zoning regulations as in *Ashland Lumber*.

In conclusion, we reverse the circuit court and direct that an order be entered reissuing the certificate of occupancy.

All concur.