RICHARD DENNING, ET AL. *v.* COUNTY
OF MAUI, ET AL.

No. 5048.

JUNE 4, 1971.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON
AND KOBAYASHI, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

The appellants bring to this court a judgment wherein the trial court, following a motion for summary judgment by the appellees, issued a peremptory writ of mandamus to the Board of Adjustment and Appeals of the County of Maui, ordering this administrative agency to hear and determine the controversy between the appellees and the Planning Director for the County of Maui. Additionally, the judgment laid down legal principles discussed hereafter, for deciding the controversy should the agency make certain determinative factual findings.

This controversy involves the application of an ordinance[1] adopted by appellant, County of Maui, establishing zoning regulations for the Kihei area in which lies

[1] Ordinance No. 641 which became effective on December 19, 1969.

property owned by appellee Denning. The individual appellants are county officials charged with the enforcement of these regulations. Maui Corporation, the other appellee, is a Hawaii development corporation with which Denning has contracted for the construction of a six-story condominium on his property.

Prior to judicial review the appellees sought relief from the Board of Adjustment and Appeals. The agency, however, on the advice of the county attorney refused to take action claiming it lacked power and authority to entertain the dispute. The briefs of both parties focus primarily on this question of jurisdiction, appellants alleging error in the trial court's mandatory order. However, attention is given to the legal guidelines enunciated by the circuit court and argument on this matter was presented to this court on appeal.

Accordingly, although the trial court did not resolve this non-jurisdictional issue, finding these legal guidelines ambiguous necessitates some examination of them in order to avoid later clarification by this court. With this in mind there follows some factual background applicable to our treatment of this matter. This chronology is dispositive of the jurisdictional issue we decide today.

## A. FACTS.

(1) Appellee Denning owns a parcel of land in the Kihei area on the island of Maui designated by Tax Key No. 3-9-20-1. On August 15, 1968, at the time Denning purchased this parcel, the classification designated therefor by the Master Plan of the County of Maui was "Hotel District." Zoning regulations for structures within this "Hotel District" specified a height limitation of 12 stories and a "floor area/lot area ratio" of 150%.[2]

---

2 This is the ratio of floor area to land area expressed as a percent and determined by dividing the total floor area on a zoning lot by the lot area of that zoning lot.

(2) On May 5, 1969 Denning wrote to the Planning Director for the County of Maui requesting approval of plans to proceed with the development of his property and the construction of an eight-story condominium apartment with a floor area/lot area ratio of 144.1%. Sketches of the proposed structure were included in Denning's letter. The applicable zoning at this time was as stated in (1).

(3) In the Planning Director's written reply of May 8, 1969 "preliminary approval" was given to Denning. The Planning Director also stated that the County Council of Maui had before it a proposed plan titled "General Plan 701" which redesignated the classification of the area encompassing Denning's property as "Resort Commercial."[3] He went on to state it was difficult to ascertain whether General Plan 701 would be adopted in its then present form and if so adopted what would be the requirements of the applicable zoning regulations.

(4) Soon afterwards Denning submitted some revised plans to the Planning Director, which for this appeal varied insignificantly from his earlier plans. Again "tentative" or "preliminary approval" was given Denning (based on "zoning for this area") in a return letter of May 26, 1969. This letter then continued, "It is difficult to ascertain at this time what might happen regarding zoning, height limitations * * * in this area." The clear implication of the above language was that "zoning regulations" would control the area's development.

(5) On July 18, 1969 "Interim Ordinance No. 621"

---

[3] "Resort Commercial," a new classification, was embodied in Ordinance No. 589, effective on January 3, 1969. The ordinance described its purpose as follows:

"The resort commercial district is intended to provide for commercial activities and services oriented towards the needs of the transient visitor. This district is distinguished from hotel districts in that independent commercial uses are permitted, whereas commercial activities in hotel districts must be accessory to the hotel use."

No zoning regulations for this "Resort Commercial" classification were promulgated at this time.

amending the zoning for the area in question was enacted into law reducing the height limitation from twelve to six stories. This ordinance did not affect the floor area/lot area ratio for the area.[4]

(6) On July 25, 1969 Denning's architect personally conferred with officials from the Maui Planning Department about the proposed development in light of the lower height regulation.

(7) Subsequently Denning submitted revised plans, these providing for a structure of six stories with a floor area/lot area ratio of 146%. In an August 13, 1969 letter from the Planning Director, "preliminary approval" was again given Denning since "the plans conform with the present zoning for the area and the interim height regulation ordinance, except for one minor correction." The correction concerned an item immaterial to this appeal. The letter confirmed that zoning regulations would control the property's development, not the adoption of General Plan 701.

(8) General Plan 701 passed final reading on August 18, 1969 redesignating the classification of Denning's property as "Resort Commercial." "Interim Ordinance No. 621" continued in force.

(9) On October 28, 1969 the Planning Director, in a letter to appellee Maui Corporation, stated that new plans for a six-story structure received by his department on October 20 conformed to "all existing zoning requirements" except for a minor recordation matter.

(10) The County Council of Maui enacted into law on December 19, 1969 Ordinance No. 641 providing for the

---

[4] The purpose of this enactment as stated in the ordinance is:

"Such regulations are deemed necessary for the purpose of providing interim regulations pending the formal adoption of a comprehensive revision of the zoning maps * * *."

Reference to the "zoning maps" included General Plan 701 later adopted on August 18, 1969.

area including Denning's parcel a zoning height limitation of two stories and a floor area/lot area ratio of 100%.

Following the adoption of Ordinance No. 641, Denning conferred with the Planning Director and was informed that the recently enacted zoning requirements applied without qualification to his land and its future development and that a building permit would consequently be denied. The ordinance itself is silent as to whether it affects development in progress to the extent of Denning's project.

The expenses allegedly incurred through December 30, 1969 in conjunction with this project total $38,047.34 major items being architectural, advertising, and legal fees. Because of these costs appellees went before the Board of Adjustment and Appeals, alleging the right to continue the development. From its refusal to act appellees took the matter to the circuit court which in turn remanded the controversy to the agency for a hearing and decision.

## B. THE BOARD OF ADJUSTMENT AND APPEALS IS WITHOUT JURISDICTION TO HEAR THIS CONTROVERSY.

Appellees, in going before the Board of Adjustment and Appeals requested that prior zoning regulations rather than those in effect be applied to Denning's property. The nature of this request, however, precludes an administrative assumption of jurisdiction. This case does not involve a petition for a variance.[5] With the enactment of Ordinance No. 641 on December 19, 1969 a change of law occurred. In hearing thereafter the dispute at hand, the Board of Adjustment and Appeals was bound to enforce the terms of Ordinance No. 641 effective at this time be-

---

[5] See Tantimonaco v. Zoning Board of Review, 100 R.I. 615, 617, 218 A.2d 480, 481 (1966).

cause to apply prior zoning regulations would nullify existing legislation. *Russian Hill Imp. Ass'n* v. *Board of Permit Appeals,* 56 Cal. Rptr. 672, 676, 423 P.2d 824, 828 (1967); *Deer Park Civic Ass'n* v. *City of Chicago,* 347 Ill. App. 346, 350, 106 N.E.2d 823, 825 (1952); *Lee* v. *Board of Adjustment,* 226 N.C. 107, 111-12, 37 S.E.2d 128, 132 (1946).

As the Board of Adjustment and Appeals was without jurisdiction to authorize Denning to proceed with construction, the trial court's judgment remanding the matter to this agency was error and is reversed.

## C. APPLICATION OF THE TERMS OF ORDINANCE NO. 641 AS TO THE APPELLEES.

The judgment of the trial court laid down legal principles for deciding this controversy should the Board of Adjustment and Appeals make certain determinative factual findings. It is apparent that upon remand, once these factual findings are made, resolution of this issue could very well be influenced by the enunciated legal principles.

The "rule of law" laid down by the trial court was, in summary:

If Denning expended substantial sums for the preparation of plans and documents in good faith reliance upon law prior to Ordinance No. 641 and which expenditures were incurred upon the reasonable probability of a building permit being issued then Denning must be allowed the right to proceed.

In order to avoid unnecessary appellate proceedings and for the proper guidance of the trial court, we are of the opinion that for Denning to be allowed the right to proceed in constructing the planned structure the facts must show that Denning had been given assurances of

some form by appellants that Denning's proposed construction met zoning requirements.[6] And that Denning had a right to rely on such assurances thereby equitably estopping appellants from enforcing the terms of Ordinance No. 641.[7]

Crucial to this issue could very well be the enactment of "Interim Ordinance No. 621" reducing the height limitation from twelve stories to six stories. The function of this measure was undoubtedly to protect the design of the proposed General Plan 701 while the zoning regulations pertaining thereto were still in their incubative stage.[8]

Mere good faith expectancy that a permit will issue does not create in a property owner a right to continue proposed construction.[9]

We remand this case to the circuit court for trial.

*Arthur T. Ueoka,* Assistant County Attorney (*Kase Higa,* County Attorney, with him on the briefs), for defendants-appellants.

*William F. Crockett* (*Crockett & Crockett* of counsel) for plaintiffs-appellees.

---

[6] Cos Corporation v. City of Evanston, 27 Ill. 2d 570, 567-77, 190 N.E.2d 364, 367-68 (1963).

[7] Bregar v. Britton, 75 So. 2d 753, 756 (Fla. 1954).

[8] *See* Note, *Stopgap Measures to Preserve the Status Quo Pending Comprehensive Zoning or Urban Redevelopment Legislation,* 14 W. Res. L. Rev. 135 (1962).

[9] Russian Hill Imp. Ass'n v. Board of Permit Appeals, 56 Cal. Rptr. 672, 676, 423 P.2d 824, 828 (1967).