ROBERT ALLEN and GRACE GUNN, Plaintiffs-Appellees, *v.* CITY AND COUNTY OF HONOLULU, Defendant-Appellant

NO. 5957

NOVEMBER 3, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

The City and County of Honolulu (hereinafter the City) brings this appeal from a judgment of the trial court granting money damages to Grace Gunn and Robert Allen (hereinafter appellees). The trial court ruled that the City, by rezoning appellees' property, was liable for costs incurred by the appellees in reliance on the zoning applicable to the property when they purchased it.

For reasons stated hereinafter, we reverse.

### ISSUE

The central issue presented by this appeal is whether the trial court erred in granting damages for the development costs incurred by appellees.

### FACTS

Appellees, a real estate agent and a developer, sought land suitable for residential development. They purchased the oceanfront property which is the subject of this appeal only after inquiring about its zoning and discussing development alternatives with an architect, Jo Paul Rognstad. On November 8, 1972, the appellees purchased the property identified by Tax Map Key Nos. 6-8-11-46 and 47 situated at Kamananui, Waialua, Oahu, Hawaii, for $207,400.00. At the time of the purchase, and since the adoption of the Comprehensive Zoning Code in 1969, the property was zoned A-3. This classification allows, among other things, construction not exceeding a height of 350 feet.

On or about November 10, 1972, appellees retained the professional services of Rognstad and he commenced architectural, engineering and other work necessary to obtain a building permit from the City for an eleven-story condominium structure. On March 20, 1973, Rognstad submitted appellees' permit application to the City's Building Department.

On March 6, 1973, ". . . in response to political pressure from certain residents in Waialua to prevent highrise construction in the area",[1] Bill No. 46, Draft 1, entitled "An Ordinance to Rezone a Portion of A-3 Apartment District Nos. R-8 and R-19 situated at Mokuleia, Waialua, Oahu, Hawaii, to A-2 Apartment District No. R-6", was introduced to the City Council. Appellees learned of the proposal to amend the zoning in a newspaper article on or about March 3, 1973, and appellee Allen later testified in opposition to the proposal at the public hearing held concerning Bill 46.

By May 14, 1973, several government agencies had initialed their approval on the permit application, but on May 15, 1973, the zoning amendment took effect as Ordinance 4145. Thereafter the permit application and construction plans were withdrawn by the appellees. The permit was neither granted nor denied by the Building Department.

Appellees claimed they had spent $77,017.26 in nonrecoverable expenses on account of the downzoning and sought damages in that amount at trial. The trial court found, as stated in its Finding of Fact No. 12, that:

> 12. Prior to the effective date of Ordinance 4145, the Plaintiffs in reliance on the A-3 zoning then in effect and on the reasonable probability that a building permit would be issued, substantially changed their position and incurred certain nonrecoverable costs for the development of their property in the amount of $67,950.26 for which they were and are liable.

The trial court stated in its Conclusions of Law:

> 1. Plaintiffs had the right to rely on the zoning re-

---

[1] Trial court's Finding of Fact No. 8 reads:

8. On March 6, 1973, Bill No. 46, Draft 1, entitled "An Ordinance to Rezone a Portion of A-3 Apartment District Nos. R-8 and R-19 situated at Mokuleia, Waialua, Oahu, Hawaii to A-2 Apartment District No. R-64" was introduced in response to political pressure from certain residents in Waialua to prevent highrise construction in the area. Bill 46 (Draft 2) was subsequently enacted into law as Ordinance 4145 effective May 15, 1973. Buildings constructed in an area zoned A2 may have a maximum height of 40 feet according to Comprehensive Zoning Code Section 21-613. The building which Plaintiffs proposed to erect conformed to the height and area limitations of an A-3 district but would not be permitted in an A-2 district.

quirements existing prior to the effective date of Ordinance 4145.

2. The City is liable for the costs incurred by the Plaintiffs in reliance on the then existing A-3 zoning and on the reasonable probability of the issuance of a building permit.

3. The mere introduction of Bill 46 on March 6, 1973 does not constitute notice to the Plaintiffs that the zoning would be changed.

## OPINION

Appellees based their claim for damages on two distinct legal theories, vested right and equitable estoppel. Though theoretically distinct, courts across the country seem to reach the same results when applying these defenses to identical factual situations. As stated in Heeter, *"Zoning Estoppel: Application of the Principles of Equitable Estoppel and Vested Rights to Zoning Disputes"*, 1971 Urban L. Ann. 63 at 64-65:

> . . . The defense of estoppel is derived from equity, but the defense of vested rights reflects principles of common and constitutional law. Similarly their elements are different. Estoppel focuses on whether it would be inequitable to allow the government to repudiate its prior conduct; vested rights upon whether the owner acquired real property rights which cannot be taken away by governmental regulation. Nevertheless, the courts seem to reach the same results when applying these defenses to identical factual situations. (Footnotes omitted.)

The California Supreme Court spoke in terms of vested rights when it denied a developer a writ of mandamus to compel the California Coastal Zone Commission to grant an exemption to its permit requirements. *Avco Community Developers, Inc. v. South Coast Regional Commission,* 17 Cal. 3d 785, 132 Cal. Rptr. 386, 553 P.2d 546 (1976), *cert. den.* 429 U.S. 1083 (1977). But in *Hollywood Beach Hotel Co. v. City of Hollywood,* 329 So.2d 10 (Fla. 1976), the Florida Supreme Court held that the City was equitably estopped from rezon-

ing petitioner's property in order to halt multi-family residential development. But, as in California, the Illinois Appellate Court, Second District, held that the developers did not acquire a vested right in the former zoning classification which would entitle them to a writ of mandamus to compel the removal of a stop work order. *First National Bank & Trust Co. v. City of Rockford*, 47 Ill. App.3d 131, 361 N.E.2d 832 (1977).

The only Hawaii Supreme Court case dealing with this issue spoke in terms of estoppel. *Denning v. County of Maui*, 52 Haw. 653, 485 P.2d 1048 (1971). The Court, at 52 Haw. 658-59, 485 P.2d at 1051, set the standard for applying the doctrine of equitable estoppel in zoning disputes, wherein this court stated:

> The "rule of law" laid down by the trial court was, in summary:

> If Denning expended substantial sums for the preparation of plans and documents in good faith reliance upon law prior to Ordinance 641 and which expenditures were incurred upon the reasonable probability of a building permit being issued then Denning must be allowed the right to proceed.

We further stated at 52 Haw. 658-59, 485 P.2d at 1051:

> In order to avoid unnecessary appellate proceedings and for the proper guidance of the trial court, we are of the opinion that for Denning to be allowed the right to proceed in constructing the planned structure the facts must show that Denning had been given assurances of some form by appellants that Denning's proposed construction met zoning requirements. And that Denning had a right to rely on such assurances thereby equitably estopping appellants from enforcing the terms of Ordinance No. 641.

> .   .   .   .

> Mere good faith expectancy that a permit will issue does not create in a property owner a right to continue proposed construction.

But we need not decide here whether the City should be estopped from enforcing the terms of Ordinance 4145.

*Denning, supra,* does not deal at all with the issue of payment of damages by the government for the development costs of the petitioners, but speaks only in terms of the right to proceed with construction. In each of the cases cited by the parties in their briefs and in each case found by this court where a developer has been held to have a vested right to a building permit, or the government held to be equitably estopped from enforcing new land use regulations, the remedy awarded has been a declaratory ruling that the new regulation is unlawful as applied to that developer, or a writ compelling the issuance of a permit. The remedy is to allow continued construction, not award damages. Here, the trial court ruled that appellees had a right to rely on the A-3 zoning and that the City was liable for appellees' nonrecoverable preparatory expenses. On review of the record it is difficult to ascertain the basis of that ruling.

The record does show that this case was the last of three heard by the same court concerning Ordinance 4145. The first two, *Guerin v. Yuasa, et al.,* Civil No. 39390, and *Hale Kona Kai Development Corp. v. Yuasa, et al.,* Civil No. 39391 (together hereinafter referred to as *Guerin*), were tried together, the Findings of Fact and Conclusions of Law, along with the Stipulation for Judgment were received in evidence below and made a part of the record of this appeal. *Guerin* involved other developers in Mokuleia, but differed factually from the case at bar in that those developers had been issued building permits (albeit by court mandate) and had begun actual construction. After the adoption of Ordinance 4145 the City revoked the permits. The trial court ruled in *Guerin* that the permits were rightfully revoked but held the City liable for the developers' wasted expenses. Not part of the record on appeal here, but a matter which this court may properly take judicial notice of (*see In re Ellis,* 55 Haw. 458, 522 P.2d 460 (1974), *cert. den.* 419 U.S. 1109 (1975) ), is the fact that the plaintiffs in *Guerin* did not seek monetary award but declaratory and injunctive relief that would permit them to complete the construction they had begun. It should be noted that no appeal was taken in *Guerin*.

It seems apparent that the trial court, in fashioning the

remedy it did in *Guerin,* and again in this case, was attempting to protect the community from undesirable development, yet not penalize landowners for what the trial court believed was a politically motivated change in the laws. The trial court in this case stated, responding to an assertion by the attorney for the City that money damages would be inappropriate:

> The court is taking judicial notice from the facts in the other case and from the newspapers at the time, the news stories at the time that this was going on, that the — and the fact that the business area is still allowing, in the B-2, 300 feet height; that the only reason that this ordinance was passed was because of the pressure of the citizens of that community; that this was not an ordinary piece of legislation.

In our opinion, to permit damages for development costs is not only unprecedented but would also be unsound policy. Were we to affirm the award of damages, the City would be unable to act, if each time it sought to rezone an area of land it feared judicially forced compensation. Monetary awards in zoning disputes would inhibit governmental experimentation in land use controls and have a detrimental effect on the community's control of the allocation of its resources. An article dealing with inverse condemnation, another type of monetary award in downzoning cases states:

> The weighing of costs and benefits is essentially a legislative process. In enacting a zoning ordinance, the legislative body assesses the desirability of a program on the assumption that compensation will not be required to achieve the objectives of that ordinance. Determining that a particular land use control requires compensation is an appropriate[2] function of the judiciary, whose function includes protection of individuals against excesses of

---

[2] A footnote, No. 53, of the text states:

The expenditure of public funds is an inappropriate function for the judicial branch, which is unable to consider and weigh community interests as well as is the legislative branch. Courts also lack the flexibility of legislatures, as a court is faced with an all-or-nothing decision, while a legislative body has a wider range of alternatives. Professor Van Alstyne, however, suggests that a complete range of intermediate positions is possible even for courts. [Citations omitted.]

government. But it seems a usurpation of legislative power for a court to force compensation. Invalidation, rather than forced compensation, would seem to be the more expedient means of remedying legislative excesses. (Footnotes omitted.)

Fulham and Scharf, *"Inverse Condemnation: Its Availability in Challenging the Validity of a Zoning Ordinance"*, 26 Stanford L. Rev. 1439, 1450-51 (1974).

Prohibiting damages for development costs does not mean that a property owner must suffer an injury without compensation, for if the facts establish that the doctrine of equitable estoppel should apply to prevent the City from enforcing newly enacted prohibitive zoning, then the property owner is entitled to continue construction. Once the City is estopped from enforcing the new zoning, if it still feels the development must be halted, it must look to its powers of eminent domain. In order for the City to operate with any sense of financial responsibility the choice between continued construction and paying to have it stopped by condemnation, if possible, must rest with the City — not property owners.

Accordingly, the order of the trial court granting damages for appellees development costs is reversed.

*Samuel P. King, Jr.*, Deputy Corporation Counsel (*George T. Aoki* and *Edmund L. Lee, Jr.*, Deputies Corporation Counsel, on the briefs) for defendant-appellant.

*Robert M. Ehrhorn, Jr. (Okumura* and *Takushi* of counsel) for plaintiffs-appellees.