Don BURNS, Appellant,

v.

Lee PEAVLER, Don Yeast, James Hunter Royalty, and Greater Mercer County Board of Adjustment, Appellees.

Court of Appeals of Kentucky.

Aug. 1, 1986.

Discretionary Review Denied by Supreme Court Jan. 13, 1987.

James F. Clay, Jr., Danville, for appellant.

W.A. Wickliffe, David Patrick, Harrodsburg, for appellees.

Before COMBS, MILLER and WILHOIT, JJ.

MILLER, Judge.

Appellant, Don Burns, appeals a Mercer Circuit Court order dismissing his cause of action. We affirm.

A detailed rendition of the facts is necessary for a complete understanding of our disposition. In October, 1982, Tyler and Tyler Enterprises (Tyler) requested a zone change from the Mercer County Planning and Zoning Commission. Tyler desired to build multi-family dwelling units on a tract of land zoned only for single or double occupancy. On October 11, 1982, Larry Morris, Mercer County Enforcement Officer, sent a letter to Tyler stating his belief that no zone change was necessary. The land in question carried a deed restriction allowing for multi-family dwellings. Mercer County ordinances provided that uses or structures existing prior to the enactment of their ordinances would be allowed to remain in force. Because the deed to the property specifically allowed for multi-family dwellings, and because the deed preexisted the Mercer County ordinances, it was concluded that construction of the units was proper, without a need to change the zone classification. Evidence from the record indicates that all parties now generally agree that the enforcement officer was incorrect in his determination that no zone change was necessary.

Armed with the advice of the enforcement officer, Tyler applied for and received initial building permits in March, 1983, and began construction the following month. The record reflects that sometime in April, the enforcement officer was contacted by the wife of Don Burns who evidently sought to ascertain how Tyler had received permission to build housing units for more than double occupancy contrary to the existing zoning restrictions. The Burns's property was directly adjacent to the Tyler project. In his affidavit, Morris reveals that he explained to Mrs. Burns both the reasoning behind his determination, and also the proper avenues available to the Burnses should they decide to appeal. He testifies they were invited to his office to discuss the situation, but that he had no

further contact with them. The Burnses have never denied that this contact took place.

Meanwhile, construction continued through the summer and into the fall of 1983. In October, nearly six months after Mrs. Burns had contacted the enforcement officer, Don Burns filed a declaratory judgment suit in the Mercer Circuit Court. The suit was dismissed on November 8, 1983, on the basis that Burns had not filed a written complaint with the proper administrative official as required by Mercer County ordinances. As such, he had failed to exhaust his administrative remedies and the court lacked jurisdiction to hear his complaint. At this point, Burns—through his attorney—commenced writing letters to the Mercer County Planning and Zoning Commission and to the Board of Adjustments wherein he complained of the Tyler development. (It should be noted that none of these letters were generated until after the suit had initially been dismissed.) Burns also filed a motion to reconsider at this juncture. Tyler countered with a motion for permanent injunction, alleging that Burns's actions had placed a cloud on his title and had placed the project in severe financial difficulty. Consequently, in December, 1983, the trial court amended its order of dismissal to include the following injunction:

> The plaintiff (Don Burns) and the defendant (Greater Mercer County Planning and Zoning Commission), the spouses, agents, servants and employees of either, and all other persons acting in active concert with either of them be and they are hereby permanently enjoined from appealing, protesting, questioning or otherwise contesting the decision of the defendant Greater Mercer County Planning and Zoning Commission allowing the construction and sale of condominium units consisting of more than two units per building upon the property owned by the defendant (therein) Tyler and Tyler Enterprises, Inc., and located in the Bright Leaf Subdivision, Mercer County, Kentucky, for which building permits were issued prior to October 10, 1983.

Burns then appealed to this court. The appeal centered on the propriety of the circuit court's granting of an injunction which he felt deprived him of his mandatory right to an appeal. In other words, Burns did not appeal the merits of the trial court's order of dismissal. On April 5, 1984, in No. 84–CA–243–MR, the Court of Appeals rendered a decision affirming the lower court, stating:

> We make no decision as to the correctness of the action taken by the enforcement officer, but it is clear that any attempt by Burns to appeal that decision must fail because he did not file an appeal or contest such decision as proscribed by the Mercer County Planning and Zoning Ordinance or the provisions of KRS Chapter 100.

In May, 1984, Burns again filed this present suit in Mercer Circuit Court, this action being in the nature of a mandamus, requesting the court to force the Board of Adjustment to issue certificates of occupancy to Tyler limiting his buildings to residency by two families or less. In other words, Burns previously attempted to halt construction, but in the instant suit, he is attempting to restrain Tyler from using the buildings as multi-family dwellings—the sole purpose for which they were built. The circuit court once again dismissed his suit, and cited Burns for contempt of the previous injunction. This appeal ensued.

Inasmuch as the resolution of this issue revolves around the administrative procedures for appeal, a discussion of the state statutes and pertinent Mercer County ordinances is in order. KRS Chapter 100 was extensively revised in 1966 so as to provide uniform legislation for the use of planning and zoning controls on land development. Prior to the 1966 revisions, review of administrative decisions with regard to zoning matters was a hodgepodge of various procedures which ranged from a complete trial *de novo* to no appeal at all, depending entirely upon the situation involved. *See* Tarlock, *Kentucky Planning and Land Use Control Enabling Legislation: An*

*Analysis of the 1966 Revision of KRS Chapter 100,* 56 KLJ 556, 624 (1967–68).

The revised legislation allowed or "enabled" local governments to set up their own planning and zoning units, as long as they conformed to the state's general guidelines. The state statutes provide for the appointment of a local administrative or enforcement official (as was Larry Morris in this case) to enforce the existing ordinances. KRS 100.271. The statutes further set out the procedures for organizing local planning and zoning commissions and boards of adjustment. The duties of the planning and zoning commissions are basically to advise the local legislative body concerning amendment of zoning classifications. The statutes give the boards of adjustment the power to grant dimensional variances and conditional-use permits. In addition, they were given authority to hear appeals from decisions made by enforcement officers in the day-to-day administration of the local ordinances. KRS 100.257. An appealing party was given thirty (30) days from the date of notice of the determination of the enforcement officer in which to file an appeal with the board of adjustment. KRS 100.261. If the appeal to the board of adjustment was unsuccessful, the statutes provided a further appeal to circuit court from *final actions* of the board. KRS 100.347. Again, the moving party is required to file his action within thirty (30) days.

The Mercer County ordinances also authorized the appointment of a zoning enforcement officer "who shall administer and enforce this ordinance and issue building permits and certificates of occupancy." Article II, Number 200. As congruent with the state statutes, appeals from the decisions of the Mercer County Enforcement Officer may be had to the Board of Adjustment. Article IV. Contrary to the statutes, however, there is no 30–day limit in which to bring the appeal. The ordinance further provides that, should the appeal to the Board of Adjustment be unfavorable, a further appeal to circuit court may be had, "in the manner provided by the laws of the Commonwealth of Kentucky and particularly by KRS 100.347." Article IV, Number 420.

Comparing the state statutory scheme to the Mercer County ordinances, it is apparent that the statutorily mandated 30–day time limit in which to bring an action of appeal from the decision of the zoning officer with the Board of Adjustment applied to Burns in this case, whether or not the local ordinance provided as much. Obviously, the intent of the statute was, and is, to prevent situations such as the one arising here, where Burns waited nearly six months after he had notice of the Tyler development to take any action.

Review of administrative decisions must strictly follow the applicable statutory procedures. *See Board of Adjustments of the City of Richmond v. Flood,* Ky., 581 S.W.2d 1 (1979). It is only with regard to actions taken by an administrative body which can be regarded as legislative, that no time limitations exist on the right to request review. *See Fiscal Court of Jefferson Co. v. Don Ridge Land Development Co.,* Ky., 669 S.W.2d 922 (1984).

Burns was precluded from filing a suit in the circuit court inasmuch as the state statutory scheme mandates that the Board of Adjustment first be allowed to review the action of the enforcement officer. KRS 100.257 and .261. (*Cf. Ashland Lumber Co. v. Williams,* Ky., 411 S.W.2d 909 (1967), a proceeding under KRS 100.980, now repealed). Only after the board's rendered decision would the act be deemed sufficiently final to qualify for judicial review. *See Thomas v. Barnett,* Ky., 397 S.W.2d 781 (1966). If Burns attempted to have the enforcement officer's actions reviewed, he did so in an untimely fashion. Moreover, as previously indicated, Burns made no contact with the Board of Adjustment until *after* he had filed suit in the circuit court. In effect, Burns was seeking review of a determination which was not administratively final. This was clearly improper. Burns contends that his present suit to enjoin the Board of Adjustment from issuing certificates of occupancy to

Tyler which would allow more than two-family occupancy is markedly different from his original attempt to stop the construction of the buildings in question. We see no distinction. What Burns has been attempting from the outset is to prevent multi-family dwellings on the property. Preventing multi-family occupancy is but another way of accomplishing the same end.

As pointed out previously, it is not seriously doubted that the initial position of the enforcement officer was incorrect. In any event, it was incumbent upon Burns to appeal to the Board of Adjustment within 30 days from first learning of the officer's decision. Admittedly, this was not done. Rather, more than six months after commencing of construction, Burns complained. Now, more than two years later, he still complains and attempts—by a circuitous method and in violation of a court-ordered injunction—to prohibit use of the buildings. This he cannot do.

For the foregoing reasons, the judgment of the Mercer Circuit Court is affirmed.

WILHOIT, J., concurs.

COMBS, J., dissents by separate opinion.

COMBS, Judge, dissenting.

I respectfully dissent from the majority opinion.

This case raises the age-old question, are we a nation of laws or of men? Thus far the score is men seven, law one. The seven are the trial judge twice, the first panel and two of the three members of this panel. As the lone dissenter, I would uphold and enforce the law which Morris and the Board were sworn to enforce.

Appellant has done everything he can to get Morris and the Board to obey the law, but to no avail. Appellant's wife first talked to Morris, and obviously pointed out that the property having been previously zoned R–2, that his permits purporting to give the builders permission to construct multi-family structures constituted a violation of the zoning ordinance. KRS 100.271

expressly denied Morris the authority which he purported to exercise. The pertinent portion of this statute provides "... and the administrative official (Morris) may be designated *to issue building permits or certificates of occupancy ... but may not have the power to permit any construction or to permit any use* which does not conform to the *literal terms of the zoning regulations.*" [Emphasis added.]

Appellants then sought a declaratory judgment adjudging the building permits to be void. This action was dismissed, and affirmed on appeal because appellant failed to comply with the review and appeal provisions of KRS 100.257, 261 and 347.

The Board obviously approved of Morris' actions. The court in dismissing the complaint not only ignored the statutory prohibition against Morris' action, but also ignored KRS 100.247 which prohibited the Board from approving his action. The pertinent part of that statute provides "the board *shall not possess the power to grant a variance to permit the use of any ... building ... which is not permitted by the zoning regulations* in the zone in question." [Emphasis added.] For his efforts in this first action appellant was rewarded with an injunction. This judgment was affirmed by another panel of this court in Case No. 85–CA–243–MR.

Appellant then sought a Writ of Mandamus seeking to restrict the use of the structures to two families as provided by the zoning ordinance. Again, the trial court dismissed their complaint and cited him for contempt of court. In so doing the court held:

5. Plaintiff, Don Burns in this action is requesting the defendants to render a determination concerning "use" of the buildings on the property described in the complaint. The question concerning the building permits was disposed of in Mercer Circuit Court Civil Action No. 83–CI–192.

6. In Mercer Circuit Court Civil Action No. 83–CI–192, by order dated December 19, 1983 this court ruled, and later up-

held on appeal, that the plaintiff there and here, Don Burns, was estopped from contesting the decision of the Greater Mercer County Planning and Zoning Commission. That decision allowed the construction of multi-family dwellings, specifically, buildings containing eight separate living areas, or an eight-plex. Inherent in that decision was the use to *use* those buildings for their intended purpose i.e., eight separate living areas. The attempt by plaintiff here to separate "structure" and "use" in this case is obviously a thinly veiled attempt to circumvent the clear order of this court enjoining him and all concerned from "appealing, protesting, questioning or *otherwise* contesting" (emphasis added) the original decision of the Mercer County Planning and Zoning Commission.

7. Plaintiff may be held in contempt of this court for what appears to be a willful violation of this court's orders.

Throughout both cases all members of the judiciary have assumed that the act of Morris in issuing the building permit was nothing more than an "error" which had to be challenged by timely review to the Board of Adjustment as provided by KRS 100.257, or that it was an "official action or decision" which had to be appealed to the Board of Adjustment within thirty days as required by KRS 100.261, or that appellant was a person who was injured or aggrieved by a "final action" that had to be appealed to the circuit court as required by KRS 100.347.

The words "erroneous" and "final action" contemplated by these statutes presuppose the existence of lawful authority which the Board and Morris lacked. Lacking any lawful authority their acts were *ultra vires* and void, *ab initio.* Therefore, their actions could not be characterized as erroneous, as contemplated by KRS 100.-257, or an official or final action within the meaning of 261 and 357. These three statutes simply had no application whatever to appellant in his efforts to seek compliance with the law.

But, right or wrong, the question of the issuance of the building permit has now been decided and that decision is the law of the case. It does not, in my opinion, estop appellant from challenging the use of the property for multi-family dwellings. It must be remembered that planning and zoning involves two separate and distinct aspects. The first aspect being the building permit which has now been decided. The second is the use aspect which was not, and could not have been decided in the earlier case. KRS 100.271 and 247 treat these aspects separately and each requires that the terms of the zoning regulations be literally complied with.

To permit this decision to stand, the courts will have to ignore the above-cited statutes which we are forbidden from doing by virtue of § 28 of our constitution, and would pave the way for the complete emasculation of our zoning statutes and ordinances.

Appellees would still have recourse under the law, if it were applied. They could permit the occupancy of their structures by two families while they petitioned, pursuant to notice and hearing, the Board for conditional use or a variance.

By stretching the imagination I can understand the majority's affirmance on this case. However, under all the circumstances, I cannot comprehend their affirmance of the injunction or the threat of contempt.