**ROSARY CATHOLIC PARISH OF PADUCAH, Kentucky, Appellant,**

v.

**Eddie WHITFIELD and City of Paducah, Kentucky, Appellees.**

**KEETON & ASSOCIATES, INC., Appellant,**

v.

**Eddie WHITFIELD; Rosary Catholic Parish of Paducah, Kentucky; and City of Paducah, Kentucky, Appellees.**

Court of Appeals of Kentucky.

May 1, 1987.

Richard L. Walter, Boehl Stopher Graves & Deindoerfer, Paducah, for appellant/Keeton.

Robert Hines, Jr., Paducah, for appellant/Rosary.

Gorman Bradley, Jr., James Utter, Paducah, for appellees/Whitfield and City of Paducah.

Before LESTER, MILLER and REYNOLDS, JJ.

MILLER, Judge.

These appeals arise from a summary judgment of the McCracken Circuit Court enjoining Keeton & Associates from operating a community residential correctional center (halfway house) in the city of Paducah, in violation of the Paducah Zoning Ordinance (PZO).[1]

Keeton holds a contract with the Corrections Cabinet, Commonwealth of Kentucky, for the operation of a halfway house in the Paducah area. On April 23, 1985, for the purpose of establishing such a house, Keeton leased from Rosary Catholic Parish of Paducah, Kentucky, property located at 621 South 7th Street. Keeton inquired of public officials as to the propriety of the Rosary site for such a facility. On June 5, 1985, Keeton received a letter from Paul E. Moore, Director and Chief Inspector for the City of Paducah, advising "that the location of 621 South 7th St. is R–4 High Density Residential Zone, and would, therefore, allow a group-type home." Relying on this letter and other assurances, Keeton ex-

---

1. Halfway houses, operated under the auspices of the Corrections Cabinet, are multiple-occupancy facilities for prisoners in the course of rehabilitative process. KRS 439.580 et seq. We note, here, the location of halfway houses is subject to approval of local government. KRS 439.590. The substance of these appeals, however, is not the City's refusal, but the judicial determination that the project violates a local zoning ordinance.

pended a large sum of money preparing the facility for occupancy. Renovation was made in compliance with code requirements and at the direction of city officials. Although the record does not provide us with the exact date, it reflects that a Certificate of Occupancy was issued by the Office of Building Inspector.

From the outset, neighborhood residents, including appellee, Eddie Whitfield, opposed the project, maintaining the use was in violation of the City's R–4 zoning classification.[2] They protested before the City Commission, but the latter took no action.

On June 29, 1985, Whitfield filed suit in the McCracken Circuit Court, seeking to enjoin the project as a violation of R–4 zoning. No constitutional assertions were made. On November 2, 1985, the court sustained Whitfield's motion for summary judgment and enjoined Keeton and Rosary Parish from the intended use of the property. The basis of the ruling was that the use violated the R–4 zoning classification. These appeals followed.[3]

We first address the question of whether the McCracken Circuit Court had jurisdiction to entertain this action. Answering this question in the negative, we do not find it necessary to address other issues raised in these appeals.

From the record, certain facts are established. Keeton approached Paul E. Moore, Paducah Building Inspector, desiring to know whether a halfway house could properly be maintained on the Rosary property. Moore, empowered by the PZO to administer and enforce zoning ordinances, answered affirmatively. Whitfield objected to the placement of the halfway house. However, no where does the record reflect that he protested before the Paducah Board of Adjustment as provided by KRS 100.261.[4] Had he so protested, he would then have been empowered to take a further appeal to the McCracken Circuit Court in accordance with KRS 100.347(1).[5] Seeking judicial relief without first utilizing his administrative remedy was in clear disregard of applicable state statutes, as well as City

**2.** Section 54. High Density Residential Zone, R–4.

The purpose of this zone is to provide an area that will combine compatible residential and business uses in such a manner that it will buffer low density residential property from high density and commercial uses:

54.01 *Principal Permitted Uses:*

(a) Any use permitted in the R–3 zone;

(b) Nursing homes and tourists homes;

(c) Professional office buildings (yard requirement for office buildings shall be same as the B–1 zone requirements);

(d) Day-care nurseries;

(e) Cemeteries;

(f) Any other use not listed, which, in the commission's opinion, would be compatible with the above uses in the R–4 zone.

**3.** We note that no appeal is taken against the Paducah Board of Adjustment, the only entity that could afford relief to appellant. It seems to us that the City of Paducah is not an appropriate party. We decline, however, to decide the case on that issue, as it was not raised by counsel. Nevertheless, we direct attention to *Board of Adjustments of the City of Richmond v. Flood,* Ky., 581 S.W.2d 1 (1978); KRS 100.347(1) and CR 73.03(1).

**4.** KRS 100.261. PROCEDURE FOR ALL APPEALS TO BOARD.—Appeals to the board may be taken by any person, or entity claiming to be

injuriously affected or aggrieved by an official action, order, requirement, interpretation, grant, refusal, or decision of any zoning enforcement officer. Such appeal shall be taken within thirty (30) days after the appellant or his agent receives notice of the action of the official by filing with said officer and with the board a notice of appeal specifying the grounds thereof, and giving notice of such appeal to any and all parties of record. Said officer shall forthwith transmit to the board all papers constituting the record upon which the action appealed from was taken and shall be treated as and be the respondent in such further proceedings. At the public hearing on the appeal held by the board, any interested person may appear and enter his appearance, and all shall be given an opportunity to be heard.

**5.** KRS 100.347(1) provides, "Any person or entity claiming to be injured or aggrieved by any final action of the board of adjustment shall appeal from the action to the circuit court of the county in which the property, which is the subject of the action of the board of adjustment, lies. Such appeal shall be taken within thirty (30) days after the final action of the board. All final actions which have not been appealed within thirty (30) days shall not be subject to judicial review. The board of adjustment shall be a party in any such appeal filed in the circuit court."

ordinance. KRS 100.261 and .347(1); PZO §§ 70–77 and 80–86.[6]

We have recently discussed the appropriate procedure in a similar case, *Burns v. Peavler*, Ky.App., 721 S.W.2d 715 (1986), and will not here rehash same. Suffice it to say that Whitfield improperly sought direct judicial intervention instead of availing himself of the applicable administrative proceedings. "Where the conditions for the exercise of power by the court are not met, the judicial power is not lawfully invoked." *See Board of Adjustments of the City of Richmond v. Flood,* Ky., 581 S.W.2d 1, 2 (1978).

 Whitfield argues that he was not required to exhaust his administrative remedies prior to filing suit seeking an injunction. For this proposition, he cites us to the case of *Ashland Lumber Co. v. Williams,* Ky., 411 S.W.2d 909 (1967). We have serious doubts as to the present viability of that authority. We note that the statute relied upon (KRS 100.980) for direct judicial relief in *Ashland Lumber* was repealed when Chapter 100 was extensively revised in 1966.[7] Our review of the case law respecting resort to judicial relief in lieu of administrative review leads us to the conclusion that an action in circuit court will lie only if the aggrieved party calls into question either the constitutionality of the statute or ordinance involved or the jurisdiction of the governmental entity to proceed. *See Fiscal Court of Jefferson Co. v. Don Ridge Land Developing Co., Inc.,* Ky., 669 S.W.2d 922 (1984), and *Goodwin v. City of Louisville,* 309 Ky. 11, 215 S.W.2d 557 (1948). An examination of the complaint filed by Whitfield indicates that neither the constitutional validity of the ordinance nor the authority of Inspector Moore to enforce it is raised. The complaint merely states that Moore was wrong in determining that the halfway house could legally exist in the zoned area. Whitfield's disagreement with Moore's decision should have been brought to the attention of the Board of Adjustment for review in a timely fashion pursuant to the local ordinance and state statute. His complaint to circuit court did not raise issues sufficient to allow him to bypass the administrative review process. For that reason, we are of the opinion that the judgment of the McCracken Circuit Court is erroneous.

 As previously noted, we would remind Whitfield, and others contemplating appeal to circuit court, that the Board of Adjustment must be made a party to any appeal taken. KRS 100.347(1). Statutory procedures must be strictly complied with in respect to administrative appeals. *See Board of Adjustments of the City of Richmond v. Flood,* 581 S.W.2d at 1.

For the foregoing reasons, the judgment of the McCracken Circuit Court is reversed and these causes are remanded with directions to dismiss the underlying action.

All concur.

---

**6.** Zoning ordinances emanate from power granted to cities via KRS Chapter 100. Therefore, it follows when local ordinances conflict with or fail to address areas of concern, the state statute is controlling. *Cf. Fiscal Court of Jefferson County v. Don Ridge Land Developing Co., Inc.,* Ky., 669 S.W.2d 922 (1984), and *Southeastern Displays, Inc. v. Ward,* Ky., 414 S.W.2d 573 (1967). *See generally* 56 Am.Jur.2d *Municipal Corporations, Counties, and Other Political Subdivisions,* §§ 374 et seq. (1971).

**7.** Prior to its revision, Chapter 100 contained a statute which allowed aggrieved parties to file suits in equity in circuit court without the necessity of seeking administrative review. KRS 100.086(2). This statute was likewise repealed by the legislature and not recodified when Chapter 100 was revised. For an in-depth discussion of this revision, *see* Tarlock, *Kentucky Planning and Land Use Control Enabling Legislation: An Analysis of the 1966 Revision of KRS Chapter 100,* 56 Ky.L.J. 556 (1967–68).