CITY OF BEREA, Kentucky, Appellant,

v.

William WREN, Appellee.

William WREN, Cross–Appellant,

v.

CITY OF BEREA, Kentucky, Cross–Appellee.

Nos. 89–CA–1135–MR, 89–CA–1191–MR.

Court of Appeals of Kentucky.

May 24, 1991.

Rehearing Denied Aug. 2, 1991.

Discretionary Review Denied by Supreme Court Dec. 11, 1991.

Sandra A. Bolin, Coy, Gilbert and Gilbert, Richmond, for appellant/cross-appellee.

Roger M. Oliver, Berea, for appellee/cross-appellant.

Before HAYES, HOWARD and McDONALD,[1] JJ.

HAYES, Judge:

The City of Berea appeals from an unfavorable determination of the Madison Circuit Court in its action for injunctive relief to preclude appellee Wren from proceeding with construction of a building under the authority of a building permit the city had revoked. The factual context in which this dispute developed originated with the issuance on August 8, 1986, by the proper official, of a permit for the construction of a commercial building, a permitted use in a B–2 zone. At the time of issuance, the official zoning map showed Wren's property as being within a B–2 zone and Wren was advised by the Berea Planning and Zoning Commission that his property was so zoned. Wren proceeded to prepare the site for construction of the building by adding 18 feet of fill to the lake portion of the property, installing a drain tile system, and tapping into the sewer system. On July 30, 1987, Wren contracted for the actual construction of the building and on August 10, 1987, entered into a lease of the building once completed. By letter dated September 2, 1987, the city notified Wren not to proceed with construction because the parcel was zoned R–3, in which a commercial building is not a permitted use. After meeting the Acting Codes Enforcement Officer for the city, it was agreed to allow the matter to come before the Board of Zoning Adjustment on September 16, 1987, and the matter was placed on the agenda for that meeting. However, on September 15, 1987, the city filed the instant suit to enjoin construction on the property.

In resolving the matter, the circuit judge determined that a conflict existed between the official map and the ordinance and declared the ordinance unenforceable and in-

---

1. Following oral argument, Judge McDonald was substituted to decide this case due to the death of Judge West.

valid due to the lack of certainty as to the intended zoning. He thus held the city was not entitled to rescind the building permit under theories of estoppel and vested rights. The trial judge also rejected the city's position that Wren should be precluded from defending this litigation by reason of his failure to exhaust his administrative remedies.

Having considered the arguments presented in this appeal in light of the record before the trial judge, we are convinced that the decision below must be affirmed.

■ We commence our discussion with the issue of exhaustion of administrative remedies. Assuming the city is correct that Wren was required to appeal the stop-work order of September 2, 1987, the city, by filing this action well in advance of the expiration of the 30–day appeal period, effectively reduced resort to the administrative process to a futile gesture. We thus have little difficulty in determining that Wren was not precluded from defending that action filed against him. The distinction from the case of *Rosary Catholic Parish v. Whitfield*, Ky.App., 729 S.W.2d 27 (1987), is clearly drawn because there the failure to exhaust remedies was attributed to the one who filed suit. Here the appeal period was scarcely more than half spent when the person assailed for his failure to exhaust his remedies was forced to defend a lawsuit.

■ Next, we turn to the issues of estoppel and vested rights. The more vexing issue in this appeal centers on the effect of appellee's reliance upon a building permit issued erroneously due to a mistake in the official map. We start with the premise that there is no justification for reliance on a permit that violates zoning regulations. *Ashland Lumber Co. v. Williams*, Ky., 411 S.W.2d 909 (1966), sets out the long-standing rule in Kentucky:

the appellants proceeded to treat the building permit as some kind of final decision by proper authority that their proposed building would not violate the zoning regulations. Again there was no justification for reliance, mainly because

the building inspector has no power or authority to make such decisions. See *Goodrich v. Selligman*, 298 Ky. 863, 183 S.W.2d 625. If the inspector issues a permit for a use that violates the zoning regulations the permit is no protection and its issuance does not estop the city from enforcing the regulations. *Attorney General v. Johnson*, Ky., 355 S.W.2d 305.

Although resolved on different grounds because the permit in question was not issued in violation of zoning regulations, the Court in *Transitions, Incorporated v. Board of Zoning Adjustment of the City of Ashland*, Ky.App., 729 S.W.2d 459 (1987), made reference to the general rule outlined in *Ashland Lumber*. The trial judge in the instant case attempted to temper the harshness of the application of this rule by use of the equitable principles of estoppel and vested rights. In *Miller v. Board of Adjustment of the Town of Dewey Beach*, 521 A.2d 642 (Del.1986), the Court outlined the distinction between the two theories:

The doctrines of equitable estoppel and vested rights, although theoretically distinct, are often applied interchangeably by courts throughout the country to reach the same results in similar factual situations. *Allen v. City and County of Honolulu*, Hawaii Supr., 58 Hawaii 432, 571 P.2d 328, 329 (1977).

As stated in Heeter, *Zoning Estoppel: Application of the Principles of Equitable Estoppel and Vested Rights to Zoning Disputes*, 1971 Urban L.Ann. 63 at 64–65:

... The defense of estoppel is derived from equity, but the defense of vested rights reflects principles of common and constitutional law. Similarly their elements are different. Estoppel focuses on whether it would be inequitable to allow the government to repudiate its prior conduct; vested rights upon whether the owner acquired real property rights which cannot be taken away by government regulation. Nevertheless, the courts seem to reach the same results when applying these defenses to

identical factual situations. *Id.* [571 P.2d] at 329 (citations omitted).

As stated before, Kentucky courts have been reluctant to accept the defense of estoppel against revocation of an invalidly issued permit, *Ashland Lumber, supra,* even when a property owner has expended significant sums in reliance upon the issuance of the permit. *Goodrich v. Selligman, supra.* Furthermore, we view the vested rights principle as more properly applicable to situations where the zoning regulation was amended after the permit was issued.

We are of the belief that this case is appropriate for the application of the doctrine of "honest error," which addresses itself to situations where an administrative official in good faith and within the scope of his duties makes an erroneous but reasonable interpretation of the ordinance and the property owner in good faith relies upon it. In such cases, an estoppel against revocation of the permit may be invoked. 3 Rathkopf, *Law of Zoning and Planning,* § 45.05(3)(d). This doctrine traces its origin to a New Jersey case that has been characterized as the "fountainhead of modern discussion concerning when a municipality is estopped from revoking a building permit." See *Rathkopf, supra.* In *Jantausch v. Borough of Verona,* 41 N.J.Super. 89, 124 A.2d 14 (1956), the Court adopted the following enlightened view of municipal estoppel:

> I have no doubt as to the good faith of plaintiffs and the building inspector. Additionally, whether the building inspector's view of the ordinance was sound or not it cannot be said to be unreasonable. There should be some point at which the owner of property who acts in such circumstances becomes secure. Proceedings for a declaratory judgment would serve that end but, realistically, resort to litigation is cumbersome in this context. The line drawn must, however, give due consideration to the rights of other property owners, and in the light thereof it probably should not be drawn at any point prior to the expiration of the right to appeal.

At 124 A.2d page 17.

The applicability of this doctrine to the instant case is founded first in the fact of the discrepancy between the ordinance and the official map and the view of the officials entrusted with responsibility for enforcing the law that the official map was correct. The city officials were fully aware of the use which appellee intended to make of this property and made no complaint as to the erroneous zoning until more than a year after the permit was issued and Wren had expended a substantial amount preparing the site. Having visited the site to investigate whether the permit had expired, the enforcement officer made no complaint as to improper zoning.

In summary, we are firmly convinced that the trial judge was entirely correct that it would be inequitable to allow the revocation of the building permit under the facts of this case.

Finally, we are in complete agreement with the trial judge's disposition of appellee's counterclaim alleging the torts of breach of a covenant of good faith and fair dealing arising out of the relationship between a municipality and her citizens and of malicious civil prosecution. In his opinion, the trial judge correctly concluded that "this matter involved a genuine dispute concerning the appropriate zoning classification of the property in question as well as the interpretation of the City's ordinances and the applicable statutes and the City acted in good faith in instituting this action...." Appellee has failed to persuade us that the ruling on his counterclaim was in any way erroneous.

The judgment of the Madison Circuit Court is affirmed both on the direct appeal and cross-appeal.

All concur.