747 P.2d 741

**William McQUILLEN,
Plaintiff–Appellant,**

v.

**The CITY OF AMMON, a municipality;
the Ammon City Council; and Hayse
Whiteley, Building Inspector and Zoning Administrator, Defendants–Respondents.**

**No. 16663.**

Supreme Court of Idaho.

Dec. 3, 1987.

Marvin R. Stucki, Idaho Falls, for plaintiff-appellant.

Stephen H. Telford (argued), St. Clair, Hiller, Wood, McGrath, St. Clair & Baker, Idaho Falls, for defendants-respondents.

BAKES, Justice.

The City of Ammon granted appellant McQuillen a building permit and a moving permit to move a log structure onto his premises. The city council, sitting as a board of adjustment, later revoked the building permits. McQuillen appealed the board's decision to district court which affirmed the revocation. No appeal was taken from the district court's decision. McQuillen then sued respondents herein (the City of Ammon, the Ammon City Council, and Hayse Whiteley) under the Idaho Tort Claims Act. The district court granted summary judgment for respondents. McQuillen appeals. We affirm.

On June 18, 1984, respondent Whiteley, Ammon City Zoning Administrator and Building Inspector, at McQuillen's request, issued a building permit and a moving permit, permitting McQuillen to move a log structure onto a lot McQuillen had purchased in Ammon, Idaho. The permits respectively designated the square footage of the structure to be 976 and 988 square feet. The building permit stated that McQuillen had to begin construction within sixty days; otherwise, the permit would become null and void.

Shortly thereafter, the Smiths and other Ammon city residents circulated a petition objecting to the placement of McQuillen's log structure. The Smiths presented the petition to Russell Swensen (Ammon City Mayor), Whiteley, and members of the Ammon City Council. The petition alleged that (1) the log structure did not meet the "general objectives and characteristics of the zone," and (2) it did not meet the 1000 square foot requirement for a single family dwelling. On July 5, 1984, Swensen gave written notice to McQuillen of the alleged building code violations, and four days later a correction notice was attached to McQuillen's log structure.

After learning of the petition, Whiteley consulted with Ammon City Attorney Joe Anderson regarding the validity of McQuillen's building permit and the correction notice issued by Mayor Swensen. In a letter dated July 11, 1984, Anderson advised Whiteley as follows:

"I understand that the building permit was issued for both the moving on of the prebuilt unit and the addition which would be a part of it. RPA zoning requires a structure of 1000 square feet as a minimum. The prebuilt structure is not 1000 square feet, but together the prebuilt and the addition would have in excess of 1000 square feet.... Where the completed unit will have more than 1000 square feet and the permit is for the completed unit consisting of the move-on plus the built on, it is my opinion that the structure would comply with the zoning area requirements of 1000 square feet.... [I]t might also be well to advise the owner that if there is some dissatisfaction with the appearance, upon complaint there could be a nuisance violation unless the structure was put into and maintained in a neat, orderly appearance."

On July 12, 1984, the Smiths appealed to the Ammon City Council in its capacity as a Board of Adjustment. Four days later Mayor Swensen issued a stop-work order.

On August 2, 1984, the Board of Adjustment hearing was held. Both the Smiths and McQuillen were represented by legal counsel and both submitted exhibits and testimony. Two weeks later, the board revoked the building permit (the moving permit having already been executed).

On September 19, 1984, McQuillen filed a petition seeking district court review of the Board of Adjustment's actions. He alleged constitutional and statutory violations and that the board's action was arbitrary, capricious and characterized by an abuse of discretion. McQuillen requested an order reinstating his building permit and requiring the Smiths and the City of Ammon to reimburse him for all out-of-pocket expenses incurred as a result of the decision rendered by the board.

On May 1, 1985, McQuillen filed a written Notice of Tort Claim with the Ammon City Clerk. McQuillen claimed not only that the City of Ammon negligently *revoked* the building and moving permits, but that Whiteley, acting as agent for the City of Ammon, also negligently *issued* the permits. McQuillen demanded reimbursement of various out-of-pocket expenses, plus $500,000 for personal damages due to rumors, inuendos and false statements which had allegedly been circulated as a result of the city's negligence.

On June 6, 1985, the district court issued its decision on appeal, stating that it could reverse the decision of the board only if one of the grounds stated in I.C. § 67–5215(g) existed; none were found to exist. Accordingly, the district court entered its final decree (*McQuillen I*), affirming the Board of Adjustment's decision. McQuillen did *not* appeal the district court's decision.

On November 6, 1985, the City of Ammon's insurance carrier denied McQuillen's tort claim; thirteen days later, McQuillen filed this action (*McQuillen II*), alleging the city's negligence and malice in issuing and revoking his permits. On June 5, 1986, respondents filed a motion for summary judgment as to all causes of action alleged in McQuillen's complaint. After a hearing, the district court issued a written memorandum decision granting respondents' motion for summary judgment. McQuillen now appeals. We affirm.

## I

Upon motion for summary judgment, all facts are to be liberally construed in favor of the party opposing the motion, which party is also to be given the benefit of all favorable inferences which might be drawn from the facts. Summary judgment should be granted only when the pleadings, depositions, affidavits and admissions indicate that there is no genuine issue of material fact. I.R.C.P. 56(c); *Rice v. Miniver*, 112 Idaho 1069, 739 P.2d 368 (1987); *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986). In the instant case, all issues can be decided as matters of law; no genuine issue of material fact remains.

McQuillen has two contentions: first, that the permits were negligently revoked; and second, that the permits were negligently issued. We address each in turn.

Permit revocation was the main issue in *McQuillen I*. To quote the district judge, "Hence one of the real issues in this case is whether the City of Ammon could legally revoke the permits once issued." That issue was decided against Mr. McQuillen by the district court, and it has not been appealed. Accordingly, it has now become final, and the doctrine of *res judicata* applies not only as to all matters decided, but also as to "every matter which might and should have been litigated in the first suit." *Duthie v. Lewiston Gun Club*, 104 Idaho 751, 753, 663 P.2d 287, 289 (1983); *Intermountain Food Equipment Co. v. Waller*, 86 Idaho 94, 98, 383 P.2d 612, 615 (1963); *Joyce v. Murphy Land & Irr. Co.*, 35 Idaho

549, 553, 208 P. 241, 242 (1922). *See also Angel v. Bullington*, 330 U.S. 183, 189, 67 S.Ct. 657, 661 (1947) ("If a litigant chooses not to continue to assert his rights after an intermediate tribunal has decided against him, he has concluded his litigation as effectively as though he had proceeded through the highest tribunal available to him."); Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* § 4433 (1981). Thus, McQuillen is precluded from further adjudication regarding the revocation of his permits.

## II

McQuillen's other argument is that the permits were negligently issued. The alleged negligence stems from Whiteley's issuance of the permit when the log structure contained less than 1000 square feet. We begin by noting that McQuillen expressly requested permits. McQuillen acknowledged that he "specifically understood that Hayse Whiteley issued the building permit to him based upon his (McQuillen's) representation ... regarding an extension which would be built onto the west end of the log structure...." McQuillen's own statements negate his conclusory allegation that the permits were negligently issued.

Nevertheless, this case can be decided as a matter of law *via* the notice requirement of the Idaho Tort Claims Act. I.C. § 6-906, as effective during the events at issue, reads as follows:

> "**6-906. Filing claims against political subdivision or employee—Time.**—All claims against a political subdivision arising under the provisions of this act and all claims against an employee of a political subdivision for any act or omission of the employee within the course or scope of his employment shall be presented to and filed with the clerk or secretary of the political subdivision within one hundred twenty (120) days from the date the claim arose or reasonably should have been discovered, whichever is later." [1]

1. In 1985, the legislature increased the time limit to 180 days.

■ The statutory period within which all claims against a political subdivision must be filed begins to run from the occurrence of the wrongful act, even though the full extent of damages may be unknown or unpredictable at that time. *Ralphs v. City of Spirit Lake*, 98 Idaho 225, 560 P.2d 1315 (1977). Knowledge of facts which would put a reasonably prudent person on inquiry is the equivalent to knowledge of the wrongful act and will start the running of the 120–day period. *Newlan v. State*, 96 Idaho 711, 535 P.2d 1348, *appeal dismissed*, 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed. 2d 367 (1975).

■ Compliance with the Idaho Tort Claims Act's notice requirement is a mandatory condition precedent to bringing suit, the failure of which is fatal to a claim, no matter how legitimate. I.C. § 6–908; *Overman v. Klein*, 103 Idaho 795, 654 P.2d 888 (1982); *Smith v. City of Preston*, 99 Idaho 618, 586 P.2d 1062 (1978); *Newlan v. State, supra.* The 120–day notice provision of the Act is not itself a statute of limitations; a separate section of the Act provides for the limitation of actions thereunder. I.C. § 6–911; *Farber v. State*, 102 Idaho 398, 630 P.2d 685 (1981). The notice requirement is in addition to the applicable statute of limitations.

The permits were issued on June 18, 1984, and McQuillen admitted receiving notice of their revocation on September 4, 1984. If the issuance of the permits was indeed negligent, McQuillen had 120 days from June 18, 1984, to file his notice of tort claim. If the revocation of the permits was negligent, he again had 120 days, arguably from September 4, 1984, to file his notice of tort claim. Notice was actually filed on May 1, 1985, meeting neither of the deadlines (though, under McQuillen's theory, we are concerned only with the 120–day period following June 18, 1984). Since compliance with the notice of claim requirement is a mandatory condition precedent to bringing suit, McQuillen's claim of negligent permit issuance is barred for failure to file timely notice. *Cf. Tovar v. Billmeyer*, 98 Idaho 891, 575 P.2d 489 (1978) (in suit seeking monetary damages brought by property owner challenging the denial of a conditional use permit, this Court held the action was correctly dismissed because the plaintiff did not present his claims within 120 days after his cause of action arose).

■ McQuillen asserts that the city had notice of his tort claim *via* the district court pleadings and filings in *McQuillen I*, which were within the 120–day period. While *McQuillen I* might arguably have given notice of a negligent *revocation* claim (as that was the theory in *McQuillen I*), it certainly would not have given notice of a negligent *issuance* claim. McQuillen's negligent issuance contention was first raised on May 1, 1985—long after the 120–day notice period had expired. Further, in actions against governmental entities, plaintiffs are not exempt from the notice of claim requirements because of substantial actual notice having been given. *Independent School Dist. of Boise City v. Callister*, 97 Idaho 59, 539 P.2d 987 (1975), disapproved on other grounds, *Larson v. Emmett Joint School Dist. No. 221*, 99 Idaho 120, 577 P.2d 1168 (1978). *Calkins v. Fruitland*, 97 Idaho 263, 543 P.2d 166 (1975). *See also Newlan v. State, supra.*

In summary, McQuillen's negligent issuance claim under the Idaho Tort Claims Act is absolutely barred for failure to timely comply with the 120–day notice requirement. Other issues, including immunity, were raised but need not be addressed. We affirm the district court's grant of summary judgment.[2]

---

2. The district judge, in his memorandum opinion, states that "since the court finds immunity from the tort, the timeliness of the filing is without significance." Thus, the district court granted summary judgment on an immunity theory, rather than on a failure to comply with the 120–day notice requirement of the Act. This, however, does not require a remand or reversal. "[W]here an order of a lower court is correct but is based upon an erroneous theory, the order will be affirmed upon the correct theory." *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 179, 595 P.2d 709, 713 (1979), as quoted in *Foremost Ins. Co. v. Putzier*, 102 Idaho 138, 144, 627 P.2d 317, 323 (1981). *Accord, Duthie v. Lewiston Gun Club*, 104 Idaho at 753, 663 P.2d at 289.

We affirm the district court upon the 120–day notice theory as to the negligent issuance claim, and on a *res judicata* theory as to the negligent revocation claim. We express no opinion on the immunity question. Costs to respondent; no attorney fees on appeal.

SHEPARD, C.J., and HUNTLEY, J., concur.

DONALDSON, J., sat, but did not participate due to his untimely death.

BISTLINE, Justice, dissenting:

## I.

The correct resolution in this case is almost reached by Justice Bakes in Part I of his opinion where he quoted from the decision of Judge George: "Hence one of the issues in this case is whether the City of Ammon could legally revoke the permits once issued." In apparent recognition of the gross unfairness of the city's action, Justice Bakes then writes that that issue has been decided against McQuillen, and this Court is powerless to rectify the outrage because McQuillen's attorney has not depicted that as a "contention" in his appellate brief. This is, simply put, untrue. Just a cursory glance at the brief submitted by McQuillen demonstrates that the contrary is the truth of the matter. Under Points and Authorities,[1] the brief sets forth the following:

## IX.

A person who obtains a permit acquires a property or vested right where he has acted on the faith of a zoning or building permit or certificate, particularly where he has made contracts and incurred expenses or obligations in reliance thereon. A permit properly obtained and under which the permitee has commenced to operate or has incurred substantial expense or obligations cannot be revoked arbitrarily.

*Tankersley Bros. Industries, Inc. vs. City of Fayetteville,* 296 S.W.2d 412, 415, 227 Ark. 130.

*Anderson vs. City Council of Pleasant Hill,* 40 Cal.Rptr. 41, 229 C.A.2d 79.

## X.

Ordinarily, the rights of a permitee are protected if the permit has been secured and the expenses have been incurred in good faith and there has been no fraud or deceit or other fault on the part of the applicant.

*Phoenix City Council vs. Canyon Ford, Inc.,* 473 P.2d 797, 12 Ariz.App. 595.

*Keiger vs. Winston–Salem Bd. of Adjustment,* 190 S.E.2d 175, 281 N.C. 715.

## XI.

In some cases, the local authority which issued a permit is estopped to revoke it where the permitee has commenced to operate or has incurred substantial expense.

*Sakolsky vs. City of Coral Gables,* 151 So.2d 433, conformed to 151 So.2d 436.

*Kaeslin vs. Adams,* 97 So.2d 461.

\* \* \* \* \* \*

## XIII.

There is a strong recent trend toward the application of equitable principles of estoppel against public bodies where the interests of justice, morality and common fairness clearly dictate that course.

*Hill vs. Board of Adjustment,* 122 N.J.Super. 156, 229 [299] A.2d 737, 741 (1973).

## XIV.

While estoppel will not normally lie against a governmental body for the unauthorized, ultra vires acts of its officials, this rule does not provide total immunity for a governmental body when its

---

1. Points and Authorities are required by Appellate Rule 35(6). A "point" is a proposition of law being propounded in a case, as noted in the Rule itself, and also in Black's Law Dictionary 1040 (5th ed. 1979).

officers or agents are acting within the scope of their authority and the requisite elements for an equitable estoppel are present.

> *Town of Largo vs. Imperial Homes Corp,* 309 S.[So.]2d 517 [571] (Fla.App. 1975)
>
> *Allen vs. City and County,* 58 Hawaii 432, 571 P.2d 328 (1977)

## XV.

Speaking in general terms, where assurances have been given, representations have been made, or a permit was issued within the general powers conferred upon a municipal officer, the claim of equitable estoppel will be sustained.

> *2 Municipal Corporation Law, Antieau (1973 Ed.),* Sec. 16 A.06

## XVI.

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

> *American Law Institute, Restatement of the Law, Contracts,* Second

And the proposition was discussed in the argument portion of the brief:

> In the instant case, McQuillen obtained what is generally considered to be an implied contractual right, as discussed in the *Restatement Of The Law, Contracts,* Sec. 90, when he obtained his permit to build. There is no question that McQuillen obtained a promise, in the form of a permit, upon which he reasonably should have been expected to act, and which actually advised him that he must act, within a period of sixty (60) days or he would lose the right granted by the permit.
>
> Although there is some difference of opinion regarding the right of a municipality to revoke permits, the equitable and appropriate view seems to be that once a permit has been granted and the

permitee has commenced to operate pursuant to the authority of the permit and has incurred substantial expense, then the local authority which issued the permit is estopped to revoke it. See *Sakolsky vs. City of Coral Gables,* 151 [So.]2d 433, conformed to 151 [So.]2d 436; and *Kaeslin vs. Adams,* 97 [So.]2d 461.

In *2 Municipal Corporation Law, Antieau (1973 Edition),* Sec. A.06, a test is suggested for circumstances in which the doctrine of estoppel should apply against municipalities and their employees. This treatise states that:

> "It is suggested that there should be no general rule that estoppel is not to be applied in police power situations. Rather, courts should be encouraged to weigh in every case the gravity of the injustice to the citizen if the doctrine is not applied against the injury to the common weal if the doctrine is applied in that case. Where any danger to the public is slight, and a citizen has made a good faith and substantial change in position in reasonable reliance upon the conduct or representations of municipal officials and agents, several courts have estopped the local government from exercising their police power in a way inconsistent with their prior representations or actions."

The appropriate and equitable rule of justice that should be applied in this case is that where assurances have been given, representations have been made, and a permit has been issued within the general powers conferred upon a municipal officer, the claim of equitable estoppel should be employed.

Quite clearly McQuillen has established in *this* Court his contention that he was wrongfully double-dealt by the city in revoking his permit. What he has established by pursuing the "point" is that he had acquired a property right which was wrongfully taken away from him after he had expended time and money in reliance on the permit to move in the log structure. However, McQuillen, being represented by able counsel who is aware of *Harrell v. City of Lewiston,* 95 Idaho 243, 506 P.2d 470 (1973), had to come to grips with reali-

ty and recognize that that case is precedent which precluded him from asking this Court to mandate the city that it restore to him the permit upon which he had relied to his detriment. In *Harrell* the relief sought in district court was a writ of mandate to compel the city to issue a zoning permit. The district court granted the writ on the basis that the city was estopped from declaring invalid a zoning change on the property in question, made after the plaintiff there had negotiated to purchase the property in question. The city appealed, and this Court in a 3–2 decision reversed the district court on the majority's conclusion that "the district court erred in holding the City was estopped to deny the change in zone." *Id.* at 249, 506 P.2d at 476.

Most apparently, McQuillen's case on an estoppel basis could not go very far in this Court. *Only three years* ago Justice Bakes, with two justices joining his opinion, reversed a district court's judgment on the basis that it erred in holding that under the factual circumstances there presented (denial of renewal beer and wine licenses for premises which had been remodeled, although licenses for the year afterward had been granted) the county was estopped. *Hubbard v. Canyon County Commissioners*, 106 Idaho 436, 680 P.2d 537 (1984). The only authority cited by Justice Bakes was the *Harrell* case.[2]

Giving the devil (*Harrell*) its due, McQuillen did not attempt to convince this Court that the city should restore to him his permits. But his brief made it absolutely clear that he did not agree that the permits could be revoked arbitrarily and without liability. Picking up exactly where I left off in quoting from the McQuillen brief, we turn to the very next sentence:

Although it is now too late to estop the City of Ammon or its employees from revoking the permit originally granted to McQuillen, this Court can instruct the Bonneville County District Court to allow a trial to go forward and allow a full consideration of all of the facts and cir-

cumstances applicable to McQuillen's claim in order to determine what money damages should appropriately be assessed against the City of Ammon as a result of the revokation of the permit, upon which McQuillen relied, to his detriment and substantial loss and expense.

Where we are now is that Part I of Justice Bakes' opinion is meaningless. At best it serves no purpose; at worst, it serves the unsalutory purpose of intimating to the reader that McQuillen allowed his permits to be revoked, and has forsaken some unknown right by not urging this Court to direct that his permits be restored—which would little avail him now even were he to convince three members of this court to all at the same time vote for the overruling and demise of *Harrell*. With that predicate in mind, it is in order to ascertain if, as Justice Bakes has written, McQuillen is entitled to no relief for what was done to him.

## II.

Justice Bakes has determined that this case can be decided very simply, i.e., "... as a matter of law via the notice requirement of the Idaho Tort Claims Act," and finds that the city is immune from responding in damages by reason of the Tort Claims Act. Totally ignored is all of the sound well-reasoned authority provided to this Court in the brief submitted on behalf of McQuillen. Rather obvious is it that that authority is not easily put aside. Because McQuillen asks for the damages which he has suffered, and mentions the negligence of the city officials in issuing him a permit in the first place, does not *ipso facto* characterize the action as a *tort* action—not where the McQuillen brief insists with abundant supporting authority that the damages sought are for the breach of the implied contract. Whether the city officials acted properly or carelessly is not of genuine concern—the fact is that a permit was issued, and McQuillen proceeded

**2.** Justice Shepard dissented, wherein he conceded that *Harrell* was controlling. He added that he continued to view the holding in *Harrell* erroneous. The remaining justice joined the opinion of Justice Shepard and fully affirmed that persuasion in *Kleiber v. City of Idaho Falls*, 110 Idaho 501 at 505, 716 P.2d 1273 at 1277 (1986).

thereafter on the basis that he held in his hand the necessary permits. The notice requirement which Justice Bakes uses as a shield is part and parcel of the Tort Claims Act, and it escapes me how the most simple case of a breach of contract can be by judicial fiat so easily converted into a tort.

It is reminiscent of another case decided by this Court ten years ago, *Lystrup, et al. v. The State Board of Education*, S.Ct. No. 12012, opinion filed March 4, 1977, wherein Justices Bakes, Shepard, and McFadden reversed a district court judgment "premised solely on an asserted contract relationship and the rights and duties that flowed therefrom." (Slip op., p. 7) —— I.C.R. ——.[3] As the dissent in that case made extremely clear, even the brief of the Board captioned its opening argument: "AN IMPLIED CONTRACT EXISTS BETWEEN A STUDENT AND THE INSTITUTION (STATE BOARD OF EDUCATION) FOR THE ACADEMIC TERM IN WHICH THE STUDENT IS ENROLLED." The majority opinion initially stated that "the sole question presented here is the existence of the contractual relationship between plaintiffs-respondents [architecture students] and the State Board of Education and the breach of such contract by the Board." (Slip op., p. 3). Much of what was written in that opinion was unsound, but as concerns this McQuillen case particularly impressive is this statement:

> Attempted application of those (contract) theories to the instant case is barred by the doctrine of sovereign immunity. (Slip op., p. 5).

> \*　\*　\*　\*　\*　\*

We hold that the acts of the State Board of Education in question here are clearly a governmental function. (Slip op., p. 6) What was written by the majority in that case, over ten years ago, in reasoning is the same used by Judge George in his decision that the state is immune from suit, citing I.C. § 6–904, and in particular (1) thereof. History thus repeats itself with

Judge George holding as did the *Lystrup* majority that the *Tort* Claims Act applies to a claim based on breach of contract.

The statute which has application to claims against a city *not* based on tortious conduct would be I.C. § 50–219:

> **Damage Claims.**—All claims for damages against a city must be filed with the city clerk within sixty (60) days after the time when such claim for damages shall have occurred; specifying the time, place and probable cause of said damage. No action shall be maintained against the city of any claim for damages until the same has been presented to the city council, and until sixty (60) days shall have elapsed after such presentation. The payment of any and all damage claims by the city shall be by resolution, and not otherwise.

It would be easy, of course, were a person of a mind to do so, to say that McQuillen is responsible for the trial court's application of the Tort Claims Act to a claim which is in actuality contractual in nature. After all, it was McQuillen who in filing with the city his claim for damages, captioned it: "NOTICE OF TORT CLAIM." But, is the correct penalty to be imposed for that injudicious decision that he thereby has forfeited all right to recompense caused him for the city's flagrant breach of contract and his damages? One would like to think not—not if achieving justice is a fundamental basis for the existence of courts.

Moreover, the Notice of Tort Claim served on the city by McQuillen also specified therein that it was being served as a notice required by I.C. § 50–219. "This claim is being filed in order to preserve William McQuillen's *rights to pursue any cause of action* he may have." (R., p. 23).

Where even the Courts, including this one, encounter much difficulty in attempting the distinction between tort actions, breach of contract actions, and actions for tortious breach of contracts, it would be judicially unseemly to penalize Mr. McQuil-

---

**3.** This opinion never found its way into the Idaho or Pacific Reports, for reasons unknown, but discussed in *Nebeker v. Piper*, 113 Idaho 609, 632, 747 P.2d 18, 41 (1987), Bistline, J., and Huntley, J., dissenting.

len for his uncertainty in knowing with exactitude what kind of action he possessed for the damage done him. It is to be noted that in his complaint he did not request any punitive damages—clearly evidencing the belief that his claim was simply that he had been double-dealt by city officialdom.

### III.

Achieving justice is without question as proper a goal in an appellate court as in a trial court. With that in mind, it is in order to return to McQuillen's brief, at p. 22, where it is submitted that this Court:

can instruct the Bonneville County District Court to allow a trial to go forward and allow a full consideration of all of the facts and circumstances applicable to McQuillen's claim in order to determine what money damages should appropriately be assessed against the City of Ammon as a result of the revocation of the permit, ... *a classic example* of the type of case which should require payment of restitution to a citizen who has been wronged by improper application of municipal police powers. (Emphasis added).

It is also a classic example of an improper exercise of the power of eminent domain, which is as much a governmental power as is police power. When the government impairs or destroys the property or property rights of an individual, without payment of just compensation therefor, it is amenable to being made to answer by a suit in inverse condemnation. In such an action it can be required to make restitution (compensation) to the injured party. If there is to be any attempt in this Court to do two-sided justice, it should readily be acknowledged by this Court that all of the elements of such an action have been clearly averred by McQuillen. The permits,

once issued to him, have been taken whether wrongfully or rightfully being of no consequence, and he is entitled to be compensated. That he has been damaged is not open to dispute,[4] and the amount thereof can be assessed at trial.

This right to compensation is not a creature of the Legislature, but is founded on heavier clay than a statute. The Constitution itself is involved. In *Renninger v. State*, 70 Idaho 170, 213 P.2d 911 (1950), this Court recognized that a *damage action* for the permanent taking of a property right was in essence "a condemnation suit in reverse." A number of inverse condemnation cases followed *Renninger*. Most of those reported cases were reviewed in *Rueth v. State*, 100 Idaho 203, 596 P.2d 75 (1979), 100 Idaho beginning at 217, 595 P.2d at 89. It is made clear that what would otherwise be a common law or statutory tort action for destruction or impairment of property or property rights when the defendant is a state or other governmental entity, it is an action predicated on the Constitution itself, i.e., a constitutionally grounded damage action, and not a cause of action created by the legislature. "An eminent domain (inverse condemnation) proceeding is not an ordinary civil action ..." *Rueth*, 100 Idaho at 220, 595 P.2d at 92, quoting from *State ex rel Flandro v. Seddon*, 94 Idaho 940, 500 P.2d 841 (1972).

Such an action as McQuillen pursued in this case being an action grounded on the Constitution itself, the legislature's statutes requiring notice within short time limits as a prerequisite to bringing a damage action sounding in tort are not applicable. The dismissal of the action should be reversed, and the issue of damages tried. No one, neither Judge Boyd Thomas, Judge Reynold George, or Justice Bakes has made any contention that the City's actions

---

4. Judge Boyd R. Thomas, in ruling on the appeal taken to him from the Board of Adjustment's decision revoking the permit, made these observations:

This is a tragic case. While the sympathies of this Court are with the petitioner, it appears that as to every issue raised the law and authorities seem to be against his position.

&ast; &ast; &ast; &ast; &ast; &ast;

It seems *unfortunate* that even though the appellant's stated intentions were commendable and he made substantial expenditures toward realizing those intentions, the law can not support activities which are pursued contrary to the police powers as enunciated in the zoning laws of the City. Hence, *sadly*, the City of Ammon prevails and the appellant's position must be rejected.

did not cause Mr. McQuillen to be damaged. The remaining question is: How much?

## IV.

The Court could and should also hold that the circumstances here presented established a clear case of an estoppel against the city, and that it could not revoke the permit once it was issued and relied upon. The authority cited to the court in the McQuillen brief, set out above, is sound and is also the general rule. It is in keeping with an Iowa case which arose out of the same situation, and it is of note because the Iowa Supreme Court was over sixty years ago more attuned to notions of equity than this Court is this day. Moreover, the Iowa court was in tune with what Justice Shepard would later write in *Harrell v. City of Lewiston*, supra.

The city of Des Moines issued a building permit to John Rehman on March 12, 1924, to construct a brick building. "As soon as the work of excavating the ground for the construction of the building, the city council was met with a storm of protests, and written objections, numerously signed, were promptly filed. The action of the city council attempting to revoke the permit was the result of these objections and protests against the invasion of the territory by any form of business activity." 204 N.W. 267, 40 A.L.R. 922 at 924 (1925). The Iowa Supreme Court held that a building permit issued by a municipal corporation is something more than a mere license revocable at the will of the licensor where it appeared that expense had been incurred in reliance on the license.

In the *Harrell* case Justice Shepard in dissent capably pointed out how the majority opinion erred in applying the protection of an estoppel to the malfeasing[5] City of Lewiston:

> I likewise disagree with the novel assertion by the court that the principle of estoppel should not be applied against a municipality within the State of Idaho. Since at least 1909 the Supreme Court of

Idaho has been committed to a different rule than that laid down by the majority herein. In that year Mr. Justice Ailshie, speaking for the court on rehearing in *Boise City v. Wilkinson*, 16 Idaho 150, 177, 102 P. 148 (1909) stated:

> "We recognize that, as a general rule, the doctrine of estoppel does not apply to municipal corporations, and we are not unmindful of the fact that the courts of many states have absolutely refused to apply it to such corporations. We are not prepared, however, to announce an unalterable and unexceptionable rule in this state, which would inevitably result in perpetrating wrong and injustice in exceptional cases like this. Courts of equity are established for the administration of justice in those peculiar cases where substantial justice cannot be administered under the express rules of law, and to adopt a rigid rule that recognizes no exceptions would be to rob such courts of much of their efficacy and power for administering evenhanded justice. The people in their collective and sovereign capacity ought to observe the same rules and standard of honesty and fair dealing that is expected of a private citizen. In their collective governmental capacity, they should no more be allowed to lull the citizen to repose and confidence in what would otherwise be a false and erroneous position than should the private citizen."

That same language has been reiterated as recently as 1965 in *Dalton Highway District of Kootenai County v. Sowder*, 88 Idaho 556, 401 P.2d 813 (1965). The circumstances there were on a par with those here:

> After the Planning and Zoning Commission and the city traffic committee had recommended approval of respondent's request for a zone change, the city council approved the zone change from (F) to (C–3) (albeit by a procedure which the majority opinion now denominates as

5. "I suggest that in this case that the City of Lewiston has acted wrongfully and to the detriment of one of its citizens." *Harrell*, 95 Idaho at 251, 506 P.2d at 478, Shepard, J., dissenting.

invalid and insufficient). Thereafter respondent acquired the property in question from his predecessor in interest, the McCanns. Thereafter the respondent submitted all required materials along with its request for a building permit. Respondent's application for the building permit was approved by the county health department, the city public works and traffic commission, and the city building officials. Thereafter, the application for a building permit was submitted to the city council.

At the city council meeting on July 12, 1971 respondent learned, evidently for the first time, that he did not enjoy the favor of the City Council of Lewiston. At that meeting the council by resolution attempted to rescind its prior acceptance of the right-of-way deed. At its meeting on July 26, 1971 the city council voted to deny the building permit, not on the basis that it had theretofore invalidly changed the zone designation for respondent's property, but, rather, on the basis that the respondent evidently did not convey to the city enough property for right-of-way. It was only at trial that the city for the first time took the position that its own ordinance changing the zone classification of the property herein from (F) to (C–3) was invalid. In my judgment the city should not then, nor should it here by permitted to question the validity or the formalities of passage of one of its own ordinances. Particularly should such a posture of the city be barred when, as in this case, the parties have changed their position to their substantial detriment in reliance upon the city's purported action.

Harrell v. City of Lewiston, 95 Idaho 243 at 250–251, 506 P.2d 470 at 477–478.

Of commanding interest to the reader of that opinion is that Justice Bakes joined the foregoing excerpted portions of Justice Shepard's dissent which with one more vote would have held the City estopped. 95 Idaho at 251, 506 P.2d at 478. As men-

tioned earlier in this opinion (footnote 2, on page 5), at the first opportunity I fully embraced that view, thus bringing to three the number of votes that, in circumstances such as were present in *Harrell* and present here, a municipal corporation can and should be susceptible to being estopped. And, as one learns in this office, three votes prevail over two votes. The three votes necessarily must come together in one case, and apparently this is not going to be the one case. Why not, however, is what is beyond my understanding. Justice Bakes in citing *Harrell* in the 1984 *Hubbard* case, *supra*, wrote in a case which did not involve a building permit case, plus detrimental reliance thereon, but on a mere license—undoubtedly a distinction with a difference. So understood, there is no reason for Justice Bakes to not adhere to the view he entertained in the *Harrell* case. Were he to stand firmly on that view today, he could clearly anticipate that two and likely three members of the court would join his opinion. As it is, however, the science of jurisprudence is not advanced and the opportunity to rectify *Harrell* is eschewed. It is not only that *Harrell* was wrongly decided, but also, as Justice Shepard pointed out, it overturned the long-standing law written by Justice Ailshie for the Court almost *eighty* years ago, *Boise City v. Wilkinson*, 16 Idaho 150, 102 P. 148 (1909): [6]

> The people in their collective and sovereign capacity ought to observe the same rules and standard of honesty and fair dealing that is expected of a private citizen. In their collective governmental capacity, they should no more be allowed to lull the citizen to repose and confidence in what would otherwise be a false and erroneous position than should the private citizen.

As the only proper conclusion which this Court should reach, it is submitted that Mr. McQuillen is entitled to an across-the-board reversal of the judgments and holdings entered by the district court, and, if it re-

---

**6.** The Idaho Supreme Court was an earlier forerunner in administering justice than the Iowa Supreme Court.

mains viable relief, to have the option of proceeding under the improperly revoked building permit, or, if not, putting on proof of his damages. If justice were to prevail this day Judge Thomas would be relieved to learn that this tragic case has been turned about, and Judge George might be gratified to learn that the Supreme Court has committed greater error in applying the notice requirement of the Tort Claims Act to a constitutionally grounded property damage action than he committed in holding the city of Ammon immune from suit.