# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36861

ALLIED BAIL BONDS, INC., an Idaho
corporation,

    Plaintiff-Appellant,

v.

COUNTY OF KOOTENAI, a political
subdivision of the State of Idaho, ROCKY
WATSON, Kootenai County Sheriff, JOHN
and JANE DOES 1 through 13,

    Defendants-Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Coeur d'Alene, April 2011 Term

2011 Opinion No. 81

Filed:  July 8, 2011

Stephen Kenyon, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho,
Kootenai County.  Hon. John T. Mitchell, District Judge.

The decision of the district court is <u>affirmed</u>.

Bistline Law, PLLC, Coeur d'Alene, for appellant.   Drake D. Mesenbrink argued.

Kootenai County Prosecutor's Office, Coeur d'Alene, for respondents.   Darrin L.
Murphey argued.

---

HORTON, Justice.

In April, 2001, Allied Bail Bonds, Inc. (Allied), the Kootenai County Sheriff (Sheriff),
and the Kootenai County Board of Commissioners (Board) entered into a settlement agreement
setting forth procedures for how inmates at the county jail would be informed of and obtain bail
bonds.   Allied brought this suit alleging several claims, including breach of the settlement
agreement.  The district court dismissed Allied's claims.  We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In September 2000, Allied brought suit against the Sheriff and Kootenai County, alleging
that the Sheriff's practices interfered with its business.  On April 19, 2001, Allied, the Sheriff,
and the Board entered into a settlement agreement.  The agreement outlined the process by which
the Sheriff was required to inform inmates of their bail bond options.  On October 9, 2007,

1

Allied filed the instant action, alleging the Sheriff and the Board had breached the settlement agreement, failed to produce documents pursuant to a request for public records, and interfered with Allied's ability to engage in its bail bonds business.

The following day, October 10, 2007, Allied filed a $700 surety bond with one surety in relation to its suit against the Sheriff. As an affirmative defense, the Sheriff asserted that Allied had "failed to comply with the bond requirement set forth in Idaho Code § 6-610." The district court heard argument on the bond issue and ordered Allied to file a $25,000 bond with two sureties. Allied filed a $25,000 bond with one surety. The defendants objected that "Allied's filing of a bond with the court after the complaint was filed is untimely and therefore does not satisfy the requirements of Idaho Code § 6-610. Additionally, the power of attorney filed by Allied does not satisfy the undertaking requirements required by the statute, in that the power of attorney has an expiration date and the court has not received adequate surety." The district court held that because Allied failed to post a bond contemporaneously with its complaint against the Sheriff and because Allied failed to file an undertaking of two sureties, application of I.C. § 6-610 required dismissal of the action.

Allied filed a second amended complaint on December 9, 2008. The second amended complaint contained additional allegations that, by encouraging the use of credit card bond payments, the Sheriff had violated article VIII, section 4 of the Idaho Constitution. Allied also alleged that I.C. §§ 19-3947 and 31-878, statutes authorizing county commissioners to supervise adult misdemeanor probation, violated Article X, Section 5 of the Idaho Constitution.

The defendants filed a motion to dismiss Allied's claims. The defendants argued that the district court lacked subject matter jurisdiction over Allied's tort claims because Allied had not complied with the notice requirements of the Idaho Tort Claims Act (ITCA), I.C. §§ 6-901 through 6-929. They also argued that Allied's complaint failed to state a claim under the public records request statutes and that the settlement agreement was void and unenforceable. The defendants asserted that Allied lacked standing to challenge I.C. §§ 19-3947 and 31-878, and that those statutes were constitutional. Further, the defendants argued that Allied did not have a protected property interest in its bail bond business.

The district court dismissed Allied's claims, and entered judgment dismissing Allied's second amended complaint on March 9, 2009. The court later found the defendants were the prevailing parties and awarded them attorney fees pursuant to the settlement agreement. The

2

court held that even if the settlement agreement was unenforceable, it entitled the defendants to attorney fees. Although the Sheriff and the Board had advanced statutory bases for an award of attorney fees, the court did not address the statutory claims based upon its determination that the settlement agreement provided for fees.

Allied timely appealed the district court's final judgment.

## II. STANDARD OF REVIEW

This Court exercises free review over questions of law, including jurisdictional and constitutional issues. *Meisner v. Potlatch Corp.*, 131 Idaho 258, 260, 954 P.2d 676, 678 (1998). Whether a contract violates public policy is a question of law. *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 189, 108 P.3d 332, 336 (2005).

On review of a district court's I.R.C.P. 12(b)(6) dismissal, this Court views all inferences in the light most favorable to the non-moving party. *Orthman v. Idaho Power Co.*, 126 Idaho 960, 962, 895 P.2d 561, 563 (1995). When considering a 12(b)(6) motion, we look only to the pleadings to determine whether a claim for relief has been stated. *Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002). The issue is not whether the plaintiff will ultimately prevail, but whether the party is entitled to offer evidence to support the claim. *Orthman*, 126 Idaho at 962, 895 P.2d at 563 (citations omitted).

## III. ANALYSIS

### A. Allied waived its challenge to the constitutionality of I.C. §§ 19-3947 and 31-878.

At oral argument, Allied expressly waived its argument that I.C. §§ 19-3947 and 31-878, which vest power to manage adult misdemeanor probation in county commissioners, are unconstitutional because article X, section 5 of the Idaho Constitution vests all power to manage matters of adult probation and parole solely in the State Board of Correction. We therefore decline to address the issue.

### B. The district court properly dismissed Allied's article VIII, section 4 claim for lack of timely notice of the claim.

Allied asserts that the Sheriff granted preferential treatment to credit card providers and thereby violated Idaho Constitution article VIII, section 4. Allied contends that the Sheriff's conduct gives rise to a cause of action for tortious interference with a business relationship, as well as a constitutional cause of action under article VIII, section 4. It is undisputed that Allied failed to provide timely notice of its claims against the Board and the Sheriff as required by the

3

ITCA, and is therefore barred from pursuing tort claims against the respondents. However, Allied argues that its claim under article VIII, section 4 is a claim arising under the Idaho Constitution, and is thus excluded from the requirements of the ITCA.[1] The Sheriff responds that the ITCA applies to all claims for money damages arising out of a wrongful government act, including Allied's claim. The district court held that tortious interference with a business relationship was the gravamen of Allied's claim under article VIII, section 4, and that the court therefore lacked subject matter jurisdiction over the claim.

Under the ITCA, government entities are liable for money damages arising out of most of their own, or their employees', "negligent or otherwise wrongful act[s] or omission[s]." I.C. §§ 6-902(7) & -903(a). The ITCA mandates that if a claimant does not provide the government with timely notice of its claim, it loses the right to assert the claim. I.C. § 6-908. Timely and adequate notice under the ITCA "is a mandatory condition precedent to bringing suit, the failure of which is fatal to a claim, no matter how legitimate." *McQuillen*, 113 Idaho at 722, 747 P.2d at 744.

Allied contends that article VIII, section 4 of the Idaho Constitution gives rise to a constitutional cause of action that is substantively similar to the tort of wrongful interference with economic relationship, but to which the ITCA does not apply. Article VIII, section 4 states:

> **County, etc., not to loan or give its credit.**
> No county, city, town, township, board of education, or school district, or other subdivision, shall lend, or pledge the credit or faith thereof directly or indirectly, in any manner, to, or in aid of any individual, association or corporation, for any amount or for any purpose whatever, or become responsible for any debt, contract or liability of any individual, association or corporation in or out of this state.

---

[1] In its briefing, Allied cited *McQuillen v. City of Ammon*, 113 Idaho 719, 747 P.2d 741 (1987), for the proposition that the same conduct may give rise to causes of action both in tort and under the Constitution, in which case the constitutional claim is not barred by failure to comply with the ITCA. However, Allied disingenuously failed to note that this reasoning was not endorsed by the majority of the *McQuillen* Court; rather, it was advanced by Justice Bistline in his dissent. *Id.* at 726, 747 P.2d at 748. In that case, a landowner claimed to have relied upon a city's issuance of a land use permit and sought damages for the city's negligent revocation of the permit. *Id.* at 722, 747 P.2d at 744. Justice Bistline argued in his dissenting opinion that the facts alleged would normally give rise to a tort action for impairment of property rights, but when asserted against a government entity, gave rise to a constitutional claim of eminent domain that was not subject to the mandates of the ITCA. *Id.* at 726, 747 P.2d at 748. However, the *McQuillen* majority disagreed, recognizing the plaintiff's claim as a mere tort and dismissing the claim for failure to comply with the ITCA. *Id.* at 722, 747 P.2d at 744. At oral argument, Allied discounted its reliance on *McQuillen*, but did not offer any other authority in support of the proposition that the government conduct at issue was not governed by the ITCA.

The tort of wrongful interference with economic relationship requires a showing that "intentional interference with a prospective economic advantage result[ed] in injury to the plaintiff [and] is wrongful by some measure beyond the fact of the interference itself." *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 286, 824 P.2d 841, 861 (1991) (internal citations removed) (citing *Pleas v. City of Seattle*, 774 P.2d 1158, 1163 (Wash. 1989); *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 582 P.2d 1365, 1368 (Or. 1978)).

We affirm the district court's holding that the essence of Allied's claim is that the Sheriff wrongfully diverted Allied's potential customers away from Allied, toward credit card companies, with the intent to harm Allied's business. We thus hold that Allied's decision to plead its claim under article VIII, section 4 does not alter the fact that the claim sounds in tort and therefore requires compliance with the ITCA.[2] The district court properly held that the failure to provide timely notice of the tort claim barred Allied's claim.

**C. The district court properly dismissed Allied's claims against the Sheriff for failure to timely post bond.**

Idaho Code § 6-610 applies to actions arising out of law enforcement officers' official duties and requires a plaintiff to post bond "as a condition precedent" to initiating suit against, or serving process on, an officer. I.C. § 6-610(2). Allied contends first that I.C. §§ 6-610(4) and 6-610(5) do not permit an officer to object where bond is not timely filed, but merely permit objection to a plaintiff's complete failure to file a bond. Allied argues that since it filed a bond only one day after filing its complaint, Allied did not totally fail to file a bond and the Sheriff has no grounds for an objection. Idaho Code §§ 6-610(4) and 6-610(5) state:

> (4) At any time during the course of a civil action against a law enforcement officer, the defendant or respondent may except to either the plaintiff's or petitioner's failure to file a bond or to the sufficiency of the sureties or to the amount of the bond.
> (5) When the defendant or respondent excepts to the plaintiff's or petitioner's failure to post a bond under this section, the judge shall dismiss the case.

In support of its argument, Allied cites dicta in *Rogers v. State*, 98 Idaho 742, 572 P.2d 176 (1977). There, this Court cautioned that literal application of the statute's requirement that a

---

[2] We express doubt that article VIII, section 4, a violation of which consists of "the imposition of some monetary liability upon a municipal corporation in favor of a non-public entity," *Hanson v. City of Idaho Falls*, 92 Idaho 512, 516, 446 P.2d 634, 638 (1968), gives rise to a cause of action that is substantively similar to tortious interference with economic relationship, as Allied contends.

plaintiff file bond in an amount fixed by a trial court before filing the suit-initiating complaint involves an "apparently sizeable jurisdictional problem," because it requires a court to set the bond's value before the court gains jurisdiction over the case. *Id.* at 743, 572 P.2d at 177.

We hold that I.C. § 6-610(2) plainly requires a plaintiff to post bond before it initiates suit against a law enforcement officer, and also that I.C. §§ 6-610(4) and 6-610(5) permit an objection and dismissal where a plaintiff fails to do so. To overcome the "jurisdictional problem" noted in *Rogers*, a plaintiff may invoke the jurisdiction of a district court by filing with the court, located in the county where the law enforcement officer performs his or her official duties, a petition requesting an order fixing the amount of bond. The petition should show that the petitioner expects to be a party to an action against a law enforcement officer, the subject matter of the expected action  and facts sufficient for the court to establish the amount of bond the plaintiff must post before it files suit or serves process. *Cf.* I.R.C.P. 27(a)(1) (establishing procedures governing depositions to perpetuate testimony).

Allied contends in the alternative, under the doctrine of *functus officio*, that the December 9, 2008 filing date of its second amended complaint is the date upon which Allied initiated suit against the Sheriff. However, I.R.C.P. 15(c) provides that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." This "relation back doctrine" protects claims from expiration of the statute of limitations, provided the defendant has sufficient notice. *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.*, 119 Idaho 171, 179, 804 P.2d 900, 908 (1991) (quoting 6 C. Wright & A. Miller, Federal Practice &  Procedure §§ 1497, 1496 (1971)). The doctrine of *functus officio*, on the other hand, holds that an amended complaint supersedes prior complaints such that all subsequent pleadings must be based upon the contents of the amended complaint. *W.L. Scott, Inc. v. Madras Aerotech, Inc.*, 103 Idaho 736, 739, 653 P.2d 791, 794 (1982). Thus, the combined effect of the relation back and *functus officio* doctrines is that an amended complaint is considered to have been filed on the date the original complaint was filed but to represent, entirely and exclusively, the substance of the plaintiff's claims. *Cable v. Olson*, 52 Idaho 389, 391, 15 P.2d 737, 737 (1932).

In the present case, Allied filed its original complaint, containing claims arising out of the Sheriff's alleged breach of the settlement agreement, on October 9, 2007, and it filed a $700

bond the next day. Allied filed a second amended complaint, also with claims arising out of the Sheriff's alleged breach of the settlement agreement, on December 9, 2008. The second amended complaint thus relates back to October 9, 2007, and precedes the October 10, 2007 date of Allied's bond filing. Since Allied initiated suit against the Sheriff before it filed the bond required by I.C. § 6-610, we hold that the district court properly dismissed Allied's claims against the Sheriff.

**D. The district court properly dismissed Allied's public records claim.**

The district court held that Allied failed to state a claim under Idaho's public records statute because Allied sought only attorney fees in relation to the respondents' alleged violation of the statute. Under that statute, "[t]he sole remedy for a person aggrieved by the denial of a request for disclosure [of public records] is to institute proceedings in the district court of the county where the records or some part thereof are located, to compel the public agency or independent public body corporate and politic to make the information available for public inspection . . ." I.C. § 9-343(1). As the district court noted, Allied conceded in its July 16, 2008 response to the respondents' motion to dismiss that it did "not seek damages for the violation of Idaho Code, Title 9, Chapter 3, other than for attorney fees." Since the only remedy Allied sought was attorney fees, Allied did not seek the statute's sole remedy of compelled document production. Thus, Allied failed to state a public records claim, and the district court's dismissal of the claim was proper.

**E. The district court properly held that the Board is not liable for the Sheriff's alleged breaches.**

Allied contends that the Board is liable for the Sheriff's conduct, either under the doctrine of respondeat superior or by its endorsement of the settlement agreement. The Board responds that county commissioners are not liable for the breach of a county officer. The district court held that the Board "does not have the authority to perform or direct the statutory duties of the Sheriff."

1. <u>The Board's limited powers do not include the power to control or manage the Sheriff's official conduct.</u>

The Board is not authorized to control other constitutional officers and therefore is not vicariously liable for the Sheriff's alleged torts. Article XVIII, section 6 of the Idaho Constitution, titled "County officers," provides for the election of both county commissioners

7

and a sheriff. The distinct constitutional offices have distinct roles and obligations. "A board of county commissioners is a tribunal created by statute with limited jurisdiction and only quasi judicial powers, and can not proceed except in strict accordance with the mode provided by statute." *Johnson v. Young*, 53 Idaho 271, 285, 23 P.2d 723, 728-29 (1932) (quoting *Gorman v. Bd. of Comm'rs of Boise Cnty.*, 1 Idaho 553, 556 (1874)). County commissioners are authorized by statute "[t]o supervise the official conduct of all county officers . . . ; see that they faithfully perform their duties; direct prosecution for delinquencies; approve the official bonds of county officers, and when necessary, require them to make reports, and to present their books and accounts for inspection." I.C. § 31-802. This Court has narrowly construed county commissioners' authority to oversee the conduct of other constitutional officers, holding that such authority exists only where a statute expressly provides commissioners with authority to control or manage that conduct. *Gorman*, 1 Idaho at 559. (lacking statutory authority, county commissioners' removal of elected county officer improper); *Reilly v. Bd. of Comm'rs of Latah Cnty.*, 29 Idaho 212, 222, 158 P. 322, 325 (1916) (county commissioners not authorized to require county recorder to keep real property index that differed from the index mandated by statute); *Hansen v. White*, 114 Idaho 907, 911, 762 P.2d 820, 824 (1988) (county commissioners authorized to implement county employee merit system under statutory grant of authority). Among a sheriff's statutory duties is the duty to "[t]ake charge of and keep the county jail and the prisoners therein." I.C. § 31-2202(6). Also, a sheriff must keep a defendant in custody until the defendant posts bail. I.C. §§ 8-106, 19-817.

Allied cites no statute that empowers the Board to control the process by which the Sheriff conducts bail proceedings at its jail. Although Allied points to I.C. §§ 20-622 and 31-1503 as statutes authorizing the Board to manage the process by which the Sheriff collects bail from prisoners, the first merely requires county commissioners to "take all necessary precaution against escape, sickness, or infection" at county jails, while the second requires commissioners to disallow the account of a county officer if the officer fails to perform his official duties. Since the provision of bail is not related to prisoner escape, sickness or infection, I.C. § 20-622 cannot be said to authorize county commissioners to control how sheriffs conduct the bail process. Similarly, I.C. § 31-1503's mandate that county commissioners disallow an officer's account if his or her duties are not satisfactorily performed does not empower county commissioners to direct sheriffs' statutorily-authorized conduct regarding bail. Because no statute empowers

county commissioners to control the constitutional office of sheriff, we affirm the district court's holding that the Board was not vicariously liable for the Sheriff's official conduct.

      2.  <u>Since the Board is not authorized to control the Sheriff's official conduct, any agreement requiring the Board to do so is *ultra vires* and unenforceable.</u>

Allied next contends that the Board assumed the obligation to control the Sheriff's conduct by endorsing the settlement agreement. The Board responds that its endorsement was merely made to resolve prior litigation pursuant to I.C. § 31-813, which authorizes county commissioners "[t]o direct and control the prosecution and defense of all suits to which the county is a party in interest, and employ counsel to conduct the same, with or without the prosecuting attorney, as they may direct."

This Court has recognized that I.C. § 31-813, which authorizes county commissioners to direct litigation, empowers commissioners to enter settlement agreements to end county litigation. *Bd. of Cnty. Comm'rs v. Bassett*, 14 Idaho 324, 324, 93 P. 774, 774 (1908). However, the power to enter into settlement agreements does not empower county commissioners to perform acts *ultra vires*, or beyond the scope of their statutorily-authorized duties. Thus, a board of county commissioners may not expand its statutory authority by contractually creating or acquiring the duty to control the conduct of other constitutional officers. To hold otherwise would blur the distinct roles set forth by the Idaho Constitution. We thus hold that the district court properly held that the settlement agreement is unenforceable against the Board.

**F. We affirm the district court's holding that Allied did not assert a protected property interest.**

The Sheriff contends that Allied did not plead its claim of a constitutionally protected property interest with sufficient particularity and is therefore precluded on appeal from asserting such claim. However, it appears from the record before the Court that the Sheriff did not present this argument prior to this appeal. "Appellate court review is limited to the evidence, theories and arguments that were presented below." *Nelson v. Nelson*, 144 Idaho 710, 714, 170 P.3d 375, 379 (2007) (quoting *Obenchain v. McAlvain Const., Inc.*, 143 Idaho 56, 57, 137 P.3d 443, 444 (2006)). Thus, the issue of whether Allied has a constitutionally protected property interest in its license to conduct business is properly before the Court.

The Sheriff argues that Allied's bonding license is merely a privilege, not a protected property right. The district court held that because Allied did not have existing contractual

relationships with jail inmates, and because the Sheriff did not wholly exclude Allied from conducting its licensed business, Allied did not assert a property interest entitled to constitutional protections.

We agree with the district court. A license is a mere privilege and does not create a vested property right. *Yellow Cab Taxi Serv. v. City of Twin Falls*, 68 Idaho 145, 151, 190 P.2d 681, 684 (1948). The government may infringe upon a license as long as the infringement is not arbitrary, unreasonable, or capricious. *Id.*; *see also Coeur d'Alene Garbage Serv. v. Coeur d'Alene*, 114 Idaho 588, 591, 759 P.2d 879, 882 (1988) ("If the City had merely regulated the operation of [the licensee] in the annexed areas by requiring it to comply with reasonable standards established by the City, there would have been no taking.").

We held in *Coeur d'Alene Garbage Service* that a licensee's existing and active business relationships may rise to the level of a protected property interest. 114 Idaho at 591, 759 P.2d at 882. If a state actor wholly excludes a licensee from continuing its existing business relationships, the licensee may be entitled to just compensation. *Id.* Yet a licensee does not have a property interest in expanding its customer base. *Unity Light & Power Co. v. City of Burley*, 92 Idaho 499, 504, 445 P.2d 720, 725 (1968). Thus, a licensee has no property interest in potential business relationships, but may be entitled to protection from total infringement upon its existing relationships.

Allied does not allege any facts that place this case within the reach of *Coeur d'Alene Garbage Service*. That is, Allied does not contend that the Sheriff wholly excluded Allied from exercising its licensed right to do business in Kootenai County, nor that the Sheriff has prevented it from engaging in business with existing, active customers. In effect, Allied asserts that by accepting credit card bond payments, the Sheriff has introduced a new form of competition to Allied's licensed bail bond business. Allied asks this Court to ignore Idaho precedent which characterizes a license as a mere privilege and elevate its bail bond license to a protected property interest. We are unwilling to do so. The Sheriff's acceptance of bail bond payment by credit card provides inmates with an additional and convenient means of exercising their right to post bond, and therefore is not arbitrary, unreasonable, or capricious. The district court properly held that the Sheriff has not unlawfully infringed upon any protected property interest.[3]

---

[3] Allied also asserts that it has a protected property interest in performance of the settlement agreement. It is true that the subject matter of a contract may be protected from infringement by a state actor. *Curr v. Curr*, 124 Idaho

**G. We affirm the district court's award of attorney fees.**

The district court awarded the respondents attorney fees based on a provision in the settlement agreement entitling the prevailing party in any dispute arising from the agreement to fees. We review a district court's award of attorney fees for an abuse of discretion. *Appel v. LePage*, 135 Idaho 133, 138, 15 P.3d 1141, 1146 (2000). A court does not abuse its discretion if it "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason." *Sun Valley Potato Growers, Inc. v. Tex. Refinery Corp.*, 139 Idaho 761, 765, 86 P.3d 475, 479 (2004).

Allied asserts that a case must be decided on the merits in order for there to be a prevailing party entitled to attorney fees. This is a question of law over which this Court exercises free review. *Contreras v. Rubley*, 142 Idaho 573, 576, 130 P.3d 1111, 1114 (2006). The authority cited by Allied does not support its contention. To the contrary, this Court held in *Straub v. Smith*, 145 Idaho 65, 69, 175 P.3d 754, 758 (2007), that attorney fees may be appropriate where the parties have voluntarily stipulated to dismissal – one instance where a case is not decided on the merits. Attorney fee awards may also be appropriate where a case is dismissed on I.R.C.P. 12(b) grounds. *E.g., Nampa Charter School, Inc. v. DeLaPaz*, 140 Idaho 23, 29-30, 89 P.3d 863, 869-70 (2004); *Losser v. Bradstreet*, 145 Idaho 670, 676, 183 P.3d 758, 764 (2008). The lack of a decision on the merits does not provide grounds to vacate the district court's award of attorney fees to the respondents.

Further, the district court's award of attorney fees was not an abuse of discretion. Where a court holds a contract is unenforceable, the prevailing party may nonetheless be entitled to an award of attorney fees under the contract. *Garner v. Bartschi*, 139 Idaho 430, 439, 80 P.3d 1031, 1040 (2003); *Ayotte v. Redmon*, 110 Idaho 726, 728-29, 718 P.2d 1164, 1166-67 (1986) (upholding district court's award of attorney fees to party successfully seeking rescission). "'It is of no consequence that the underlying contractual obligation is unenforceable. A prevailing party may recover attorney fees even though no liability under a contract was established or where no contract was, in fact, ever formed.'" *Garner*, 139 Idaho at 439, 80 P.3d at 1040

---

686, 691-92, 864 P.2d 132, 137-38 (1993). In the present case however, Allied contends that the Sheriff's alleged breach of the settlement agreement amounts to an infringement. Allied's logic is flawed. The mere fact that a state actor is a party to a contract does not elevate that state actor's contractual breach to a constitutional violation.

(quoting *Hilbert v. Hough*, 132 Idaho 203, 207, 969 P.2d 836, 840 (Ct. App. 1998)). In the present case, paragraph twelve of the settlement agreement entitled the prevailing party in any action to enforce the agreement to an award of reasonable attorney fees.

The district court had broad discretion to find the respondents, as the parties that prevailed as to each of Allied's claims, were the prevailing parties. The court acted within the bounds of its discretion and the applicable law when it found that the respondents were entitled to attorney fees under the settlement agreement, and reached its decision by an exercise of reason. We hold the district court properly awarded attorney fees to the respondents as the parties prevailing below.

**H. The Board and the Sheriff are entitled to attorney fees on appeal.**

Allied requests attorney fees on appeal under the settlement agreement, I.C. § 12-120(3), and I.C. § 12-121. The respondents likewise request attorney fees on appeal under the settlement agreement, I.C. § 9-344, I.C. § 12-117, I.C. §12-120(3), and I.C. § 12-121.

We hold that the respondents are the prevailing parties on appeal and are entitled to attorney fees pursuant to I.C. § 12-117. In a civil action between a political subdivision and a person, the prevailing party is entitled to reasonable attorney fees if "the nonprevailing party acted without a reasonable basis in fact or law." I.C. § 12-117(1). For purposes of the statute, a private organization such as Allied is a person. I.C. § 12-117(4)(a). Allied misrepresented controlling precedent in its briefing, and also presented multiple arguments in its briefing that it abandoned at oral argument. Further, Allied unreasonably pursued this appeal even though it failed to comply with the notice requirement of the ITCA and the bond requirement of I.C. § 6-610. *Jenkins v. Barsalou*, 145 Idaho 202, 208, 177 P.3d 949, 955 (2008). Allied's conduct on appeal was not reasonably based in either fact or law, and we therefore award to respondents attorney fees associated with this appeal.

## IV. CONCLUSION

We affirm the district court's judgment dismissing Allied's claims and awarding attorney fees to respondents. Attorney fees and costs to respondents.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.